Melba Jean FLICK, Administratrix of the Estate of Ray Louis Flick, Deceased, Appellant,

v.

Elmer CROUCH, d/b/a Crouch Welding Service, et al., Appellees.

No. 45326.

Supreme Court of Oklahoma.

Sept. 14, 1976.

Rehearing Denied Nov. 16, 1976.

Rinehart, Cooper & Stewart, Oklahoma City, Frank Seay, Dick Bell, Seminole, for appellant.

McKinney, Stringer & Webster, by Kenneth N. McKinney, Jack O'Toole, Fred Black, Loyd Benefield, Savage, Gibson, Benefield & Shelton, Robert D. Epperson, Fenton, Fenton, Smith, Reneau & Moon, Gary C. Bechman, Rhodes, Hieronymus, Holloway & Wilson, Oklahoma City, for appellees.

Elmer Crouch, pro se.

A. L. McLeary, pro se.

BARNES, Justice:

The parties herein have filed briefs dealing with the question of the applicability of the doctrine of res ipsa loquitur to establish prima facie negligence against multiple defendants who had done welding in relegging a drilling rig shortly before its collapse resulting in the death of Appellant's decedent.

The pertinent facts are as hereinafter related. Decedent, Ray Louis Flick, employed by Parker Drilling Company as a roughneck, was killed December 11, 1963, while engaged in drilling a well for oil and gas near Coal, Oklahoma. The driller of Appellant's decedent's drilling crew was in the process of pulling pipe from the hole, which was approximately 3,800 feet deep, when the derrick upon which Appellant's

decedent was working collapsed causing his death.

Prior to the collapse of the oil rig, deceased's employer, Parker Drilling Company, hereinafter referred to as "Parker Drilling," made the decision to "re-leg" the structure in the hope of increasing its total strength and weight capacity. This was accomplished by welding additional iron angles and braces to the legs of the derrick and repairing and replacing crossbraces on the derrick.

Parker Drilling had no welders in its employ. It hired Appellee, Elmer Crouch, to do the work, and he in turn engaged the other welder Appellees to assist him by doing the welding because of the size of the job and the need to finish the job in a short time. Work was performed both night and day and all Appellees participated in making the allegedly negligent welds causing the re-legged derrick to collapse. Each welder worked all over the rig and no one but the welders knew what weld was made by what welder. Crouch supervised the welders and signed their tickets to verify the work they had done. Each welder testified he carried on an independent business and had billed Parker Drilling for the work done on the rig, and considered himself as a self-employed person. Parker Drilling did not carry any of the welders on its payroll and no income tax or social security withholding was made on any of the checks to Appellee welders.

The rig was a rotary jackknife derrick manufactured by Lee C. Moore, Inc., in March, 1951. Parker Drilling assigned the number 69 to this rig. Its rated lifting capacity as originally manufactured was 480,000 pounds, before the re-legging operation.

On the date of the derrick's collapse, the pipe and equipment being hoisted placed a strain of 150,000 pounds on the derrick, well within the rated capacity even before the re-legging operation. The rig operated for five days until December 11, 1963, when operations were halted so that a welder, not joined as a defendant in this case, could make repairs on the equipment. A short time later, a loud, popping noise was heard, the lights went out and the rig collapsed, killing Appellant's decedent.

This case was first considered by our Court in Case No. 41,512, where we held the Trial Judge was in error in sustaining defendants' plea to the jurisdiction of the court, as a matter of law, and remanded it for trial. The trial court had originally sustained defendants' plea to the jurisdiction and held, as a matter of law, that plaintiff's claim was barred against these defendants as the exclusive jurisdiction over the matter was within the State Industrial Court. This holding was based upon the trial court's finding, after an evidentiary hearing, that the welders were employees of Parker Drilling and co-employees of the deceased, and that they were therefore immune from common law liability in tort for negligence under the terms of 85 O.S.1961 § 44(b). Plaintiff appealed, contending that the welders were independent contractors, not employees of Parker Drilling. In that opinion, we held in part that the evidence concerning the status of Elmer Crouch, the welder who hired the other welders and supervised the project, was conflicting as to whether he was an employee or an independent contractor. We further held that since his status formed a material issue in the case, the evidence, being subject to more than one inference, was not capable of being decided as a matter of law, but must be submitted to a jury for a factual determination. In so ruling, the Court stated:

"Conflicting inferences may be drawn from the evidence as to the crucial issue of Crouch's relationship to Parker. This issue may not be decided by the court but must be submitted to the jury. Since the status of Crouch remains undetermined, it is not necessary for us to pass upon the relationship of the other welders either to Crouch or Parker. The nature

of that relationship depends upon Crouch's status in relation to Parker."

When the case came up for trial again, the trial court held that the question whether the Appellees were employees of Parker Drilling or independent contractors would be a question for the jury, because under the evidence introduced it was a disputed question of fact. Further, the Court held that the evidence indicated the rig fell due to the bad welds, and there was no intervening cause of the accident. Then the Court went on to say:

"Now, in the view of the Court, the controlling factor in this case and on which I have determined that the demurrer should be sustained is the question of the instrumentality or instrumentalities, the instrumentalities being the welds, the instrumentality being the rig, were not under the control of the defendants, but was in fact under the control of Parker Drilling Company, specifically its employees, Ben Johnson, Pettit, the driller —who was on the well on location, and also Wagnon, I believe, who was the man who testified—who there was testimony about who made the original arrangements with the defendant, Crouch.

"There is no doubt that the defendants, seven defendants excluding Crouch at this point, did perform their welds under the supervision of Mr. Crouch and that Mr. Crouch—I say performed their welds—I don't mean individually, but performed their work, total work, being told where to place the welds and where to place the cross-members and other sub-structure although not how in fact to perform their individual welds.

"Crouch and Ben Johnson did this. Crouch himself did it under the supervision of Ben Johnson and later Pettit.

"Two or more of the defendants in addition to Crouch or with Crouch and Pettit also performed welds at the location of the drill site. We don't know who those were.

"The same rule would apply. These defendants, including the defendant, Crouch, did not have the necessary management of the instrumentalities involved in order to invoke the doctrine of res ipsa loquitur.

"Here the derrick and the relegging— the relegging operation—were under the control of the Parker Drilling Company."

Appellant appeals this ruling of the Trial Court sustaining Appellees' demurrer to the evidence, holding as a matter of law that the Appellees were not in control of the instrumentality which caused the death of her decedent and that therefore the doctrine of rés ipsa would not apply. Appellees urge that the doctrine of res ipsa loquitur is inapplicable to this case because of the absence of exclusive control over the instrumentality by the welders and because Appellant's own evidence established that a non-defendant, Parker Drilling, and its employees had the principal responsibility for this instrumentality through its power of planning, management, supervision, inspection and acceptance of the work and its responsibility for the actual performance of part of the work.

■ We agree with the Appellees that res ipsa loquitur is not applicable to this case; however, we do not agree that the trial court was correct in sustaining Appellees' demurrers to Appellant's evidence.

In *Lawton Coca-Cola Bottling Co. v. Shaughnessy,* 202 Okl. 610, 216 P.2d 579 (1949), we said in the first syllabus:

"Res ipsa loquitur is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer."

A definition of a res ipsa case was set forth in *Harke v. Haase,* 335 Mo. 1104, 75 S.W.2d 1001 (1934):

"What is a res ipsa loquitur case anyhow? Reduced to simple terms, does it not merely mean that negligence can be proved by circumstantial evidence and that certain circumstances, as to the character of an accident, are sufficient to take the case to the jury? As is so well said by the Supreme Court of the United States (*Sweeney v. Erving,* 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815, Ann.Cas.1914D, 905) in the case quoted from in the separate concurring opinion in *McCloskey v. Koplar:* 'Res ipsa loquitur *means* that *the facts* of the occurrence warrant the inference of negligence, not that they compel such an inference; that they *furnish circumstantial evidence of negligence where direct evidence of it may be lacking,* but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict.'

"The principal difference between a res ipsa loquitur case and a specific negligence case would seem to be that the very basis of liability, the existence of some negligence, may be shown by a particular kind of circumstantial evidence, namely, an unusual occurrence of a character which ordinarily results only from negligence (both in pleading and proof), and from which, therefore, negligence is a reasonable inference; while in a specific negligence case the careless acts or omissions which constitute negligence must be stated and proven. In other words, *in a res ipsa* case the ultimate fact, *some kind of negligence is inferred* without any evidential facts except the unusual occurrence itself; *while in a specific negligence case there must be evidential facts sufficient to show some negligent acts or omissions which were the proximate cause of the occurrence.*" (Emphasis ours)

In *Brizendine v. Nampa Meridian Irrigation District,* 548 P.2d 80 (Idaho 1976), it was stated:

"Res ipsa loquitur replaces direct evidence of negligence with a permissive inference of negligence."

In recent years, res ipsa loquitur has been extended to multiple defendant cases. Appellant relies on *St. Johns Hospital and School of Nursing v. Chapman,* 434 P.2d 160 (Okl.1967), which applied res ipsa loquitur against hospital employees where the plaintiff patient suffered a broken leg while she lay unconscious in her hospital bed. The first syllabus by the Court in that case states:

"The doctrine of res ipsa loquitur is a rule of justice. It is a rule of necessity in that it is applied only in negligence actions wherein, because of the particular situation existing at the time the negligence, if any, would have occurred, proof of whether or not negligence on the part of the defendant was involved is peculiarly within the power of the defendant and is beyond the power of the plaintiff. Its basic result, and purpose, is to aid the plaintiff in such a situation to make a prima facie case of negligence on the part of the defendant by allowing the trier of the facts to infer negligence on the part of the defendant as a legitimate deduction of fact from the fundamental facts established by direct evidence, upon the theory that common experience of men tells one that, in such a situation and in the ordinary course of events, the injury or damage complained of by the plaintiff would not have occurred in the absence of negligence upon the part of the defendant."

In *St. Johns,* supra, the plaintiff brought in all hospital employees charged with her care and showed that while unconscious her leg was broken. In that case, we concluded res ipsa could be applied where "direct proof of the defendant's negligence is beyond the power of the plaintiff."

Appellant's position in the instant case is totally different. Appellant alleged and

brought on proof to substantiate her claim that the oil rig collapsed because of the inadequate welding of the Appellees. Appellant is not in the position of having to show such accidents ordinarily do not happen in the absence of negligence and, therefore, seeking an inference of negligence against these Appellees. There is no room for an inference of negligence in this case. Appellant herein limited her case to the negligence of the welders and she must stand or fall on the proof of this particular point. She does not need an inference of negligence but of responsibility. Having shown her version of the cause of the oil rig's collapse to be inadequate welding, Appellant needed to place responsibility for that welding upon one or more of the Appellees. Here, direct proof of the Appellees' negligence is not beyond the power of the Appellant. Testimony of Appellant's expert witnesses, if believed, provides such direct proof. Therefore, the doctrine of res ipsa loquitur, which provides in a proper case an inference of negligence, cannot and need not be extended in the manner urged by Appellant.

■ The question then becomes, given the inapplicability of res ipsa loquitur to Appellant's case, did she produce evidence showing that the welding was performed without due care and that it was the proximate cause of the structure's fall on decedent, resulting in his death? Appellant's experts testified that the welding material had broken in the weld and that when a material is properly welded the weld will last as long as the parent material, and that the weld, being stronger than the parent material, will not break in the weld. From a careful reading of the voluminous transcript, we think there is ample evidence, if believed, to indicate negligence in forming the welds, resulting in the oil rig's collapse.

We again reverse and remand this case to the trial court for a jury determination of the relationship between the parties, whether they are employees or independent contractors. If independent contractors, the jury must then determine which, if any, of the defendants, or combination of defendants, were guilty of negligence and whether or not said negligence was the proximate cause of the collapse of the oil rig.

For the reasons herein stated, this cause is reversed and remanded for proceedings not inconsistent with the views expressed herein.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, SIMMS and DOOLIN, JJ., concur.

IRWIN and LAVENDER, JJ., dissent.