**Bill R. MIDDLEBROOK and Melynda K. Middlebrook, Appellees,**

v.

**IMLER, TENNY & KUGLER, M.D.'S, INC., a corporation, Bone and Joint Orthopedics, Inc., a corporation, Robert L. Imler, M.D., and J.L. Richardson, M.D., Appellants.**

Nos. 56179, 56180.

Supreme Court of Oklahoma.

July 23, 1985.

As Corrected Aug. 14, 1985.

Rehearing Denied Jan. 13, 1986.

Pryor, Carney & Johnson, Thomas L. Roberts, M. Randolph Barnhart, Englewood, Hopkins, King & Rucker, Don Hopkins, Mark Finnerty, Joe Francis, Best, Sharp, Thomas, Glass & Atkinson, Joseph M. Best, Joseph A. Sharp, Tulsa, for appellants.

Michaud, Cordry & Michaud by Gerald L. Michaud and Dwight A. Corrin, Wichita, Kan., Morrel, Herrold & West, Inc. by R. Dow Bonnell and Donald E. Herrold, Tulsa, W.C. Sellers, Inc. by W.C. Sellers, Sapulpa, for appellees.

HARGRAVE, Justice.

The plaintiffs, Bill R. Middlebrook and Melynda K. Middlebrook, brought two actions against Imler, Tenny & Kugler, M.D.'s, Inc., a corporation, Bone & Joint Orthopedics, Inc., a corporation, Robert L. Imler, M.D., and J.L. Richardson, M.D., for damages arising from surgical treatment of a spinal injury suffered by Mr. Middle-

brook and a derivative action for loss of consortium arising therefrom. After an extensive trial, the cause was submitted to a jury. The jury returned a verdict in favor of all defendants on the cause of action arising from the rupture of a portion of Mr. Middlebrook's intestine while he was hospitalized in St. John's Hospital for treatment of the cervical spinal injury. The remaining claim of Mr. Middlebrook related to the treatment of the spinal injury, and upon that claim the jury found for the plaintiff and against Robert L. Imler, M.D., J.L. Richardson, M.D., Bone & Joint Orthopedics, Inc., and Imler, Tenny, & Kugler, M.D.'s, Inc., returning a verdict in the amount of $2.3 million. On the wife's claim for consortium the jury returned a verdict against the same defendants in the amount of $175,000. The defendants filed a motion for new trial and it was denied; this appeal ensues.

The plaintiff, Bill Middlebrook, suffered a fracture and dislocation of one of the vertebra of his neck in an auto accident. Immediately following that he experienced paralysis, loss of sensation, and was unable to stand. He was taken to an emergency facility at Hillcrest Medical Center where he experienced spontaneously a cessation of symptoms and was released. Subsequently he experienced pain in the right shoulder and arm. Mr. Middlebrook consulted Dr. Imler and x-rays disclosed a fractured dislocated vertebra in plaintiff's neck. The doctor recommended hospitalization and possible surgery which plaintiff postponed for a period of weeks in order to arrange the affairs of his independently-owned business for the necessary three week absence. Plaintiff was admitted to St. John's Medical Center in November of 1976 and placed in traction. Due to various factors, he became constipated after several days on a regular diet, and suffered a perforation of the cecum. Corrective surgery to clean out the abdominal cavity was performed on November 26, 1976. After recuperation from this procedure it was determined by the treating physicians that the traction was not alleviating the cervical spinal defect, and he was operated upon by Drs. Imler and Richardson. The dislocated vertebra was found to be fused to its neighbor on one side. Dr. Imler made a hole to view the dura covering the spinal cord by removing a small portion of two adjacent vertebrae. Dr. Richardson made a strut bone graft on the side of the spine opposite the fusion. During the course of the operation something occurred which caused plaintiff to regain consciousness. Subsequently, he found he had no feeling in his hands and an inability to control the movements of his arms and legs. Quite briefly stated, the cause of this partial paraplegia was determined to be a compromised blood supply to the spinal cord which permanently injured plaintiff's spine and degraded the spine's ability to transmit nerve impulses from below the constricted portion of the spine.

Plaintiff attempted to show the path of the spinal cord through the vertebra was congenitally narrow in his case. That fact, combined with a certain amount of inevitable swelling of the cord resulting from surgery in addition to a further constriction of the spinal canal at the site of the dislocation dictated certain decompressive surgical procedures would have been required of the neurosurgeon. Failure to provide room for the post-operative foreseeable swelling, resulting in loss of blood supply (causing plaintiff's injury) was a violation of the standard of care owed a patient by a neurosurgeon.

Plaintiff's position at trial was that the operation, as planned and executed, could not have been expected to alleviate Middlebrook's symptomology but should have been expected to cause further involvement (swelling) which would further impair plaintiff. Thus, if surgery for this condition were necessary the procedure was inappropriate. Secondly, plaintiff claimed the surgery itself was unnecessary because plaintiff's symptomology was fixed and not progressive, and the risk of the operation was too great to justify surgical relief of the shoulder pain. Additionally, plaintiff claimed that at the first sign of the post-surgery increased neurologic involvement

he should have been reoperated upon to alleviate the deteriorated condition (which was not done).

The defendants contended the surgical procedure was necessary and proper because plaintiff was progressively worsening, and the swelling of the cord was an atypical event termed an "ischemic attack of the cord" which could not have been expected or prevented.

Appellants contend it was error to give the jury a *res ipsa loquitur* instruction in the face of expert evidence of specific acts of negligence. We begin to examine this contention with the consideration that the legislature has spoken to the use of a "presumption of negligence" in medical malpractice actions in 76 O.S. 1981 § 21, which begins as follows: "In any action arising from negligence in rendering medical care, a presumption of negligence shall arise if the following foundation facts are first established:"[1] The statute provides the presumption is available in *"any action"* for medical malpractice where it is established plaintiff sustained injury caused by an instrumentality solely under the control of defendant or defendants and such injury does not ordinarily occur absent negligence.

■ Appellants contend this statute only specifies additional restrictions on the application of the common law doctrine of *res ipsa loquitur.* Thus for the doctrine to apply it must satisfy the requirements of both the common law and statute. To so limit the application of the statute is contrary to the language found therein, and additionally, is contrary to the precepts expressed in 12 O.S. 1981 § 2 and 25 O.S. 1981 § 29 to the effect that statutes in derogation of the common law are not to be

strictly construed but construed liberally to promote their object. We conclude that to limit the statutory presumption of negligence found in 76 O.S. 1981 § 21 only to instances where the statute and the common law doctrine of *res ipsa loquitur* apply is unwarranted. The statute explicitly states the presumption is applicable "in any action" ... "a presumption of negligence *shall* arise ..." if three criteria are met. The statutory language is clearly mandatory and clearly applies to all actions for recovery for medical negligence, limited only to actions where plaintiff experiences an injury caused by an instrumentality under the sole control of defendants which does not ordinarily occur absent negligence.

Appellants cite *Flick v. Crouch,* 555 P.2d 1274 (Okl.1976), for the principle that the doctrine of *res ipsa loquitur* applies only to cases in which there is no direct evidence to establish negligence. Although that opinion is dated after the effective date of the statute, it is not an action for recovery of damages for medical negligence and thus is not in point here.

■ Additionally, appellants contend that the persuasive authority of *Lambert v. Midwest City Memorial Hospital Auth.,* 671 F.2d 372 (10th Cir.1982) holds that the statute in question does not authorize a *res ipsa* type of instruction where plaintiff has knowledge and presents evidence of specific negligent acts. However, it is noted that the *res ipsa* instruction was found not to be applicable to that case because the defendant was not shown to have exclusive control over the instrumentality causing the harm. Thus we find no error in allowing the *res ipsa loquitur* instruction.

---

1. 76 O.S.1981 § 21
 Presumption of negligence.
 In any action arising from negligence in the rendering of medical care, a presumption of negligence shall arise if the following foundation facts are first established:
 1. The plaintiff sustained any injury;
 2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants; and

3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant.
 If any such fact, in the discretion of the court, requires a degree of knowledge or skill not possessed by the average person, then in that event such fact must be established by expert testimony.

Appellants predicate reversible error on the failure of the trial court to instruct the jury that an award of damages occasioned by personal injury was not taxable under applicable federal income taxation statutes. Appellants point to *Norfolk & Western Ry Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), where the United States Supreme Court found reversible error in the trial court's refusal to instruct the jury that such an award is not taxable in a Federal Employers Liability Act case. Later, in *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), that court noted that the ruling of *Liepelt* was not limited to FELA cases, stating the Federal Employers Liability Act afforded no guidance on the issue and the *Liepelt* decision reflected a federal common law rule, 453 U.S. at 486, 101 S.Ct. at 2879. *Gulf v. Mobil* was remanded to state court of Texas for a determination of whether the applicable state law required such an instruction. In *Gulf Offshore Co. v. Mobil Oil Corp.,* 628 S.W.2d 171 (Tex.App.1982), cert. den. 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), the Texas Court ruled that under the controlling state law of Louisiana, issuance of a non-taxability instruction was discretionary, and *Liepelt* did not control inasmuch as the case was not based upon the FELA. Thus the *Liepelt* rule does not apply to areas controlled by state law.

State laws on the issue of a non-taxability instruction are collected in 16 ALR4th 589 and reflect a majority of the jurisdictions which have passed upon the issue will not permit issuance of such a cautionary instruction. Be that as it may, no state has held such an instruction is required in instances where it has not been requested. To so hold in this jurisdiction would require this court to rule that the issue of nontaxability is fundamental and the trial judge is required to give such instruction on his own motion. 12 O.S.1981 § 577 subd. 5 and 6, *Binning v. Safeway Stores, Inc.,* 532 P.2d 1198 (Okl.1975), *McGuigan v. Harris,* 440 P.2d 680 (Okl. 1968). Taxability is neither a fundamental issue in general nor a decisive issue in this action. The appellants objected to the trial court's damage instruction and presented an alternative, and in neither case was taxability mentioned. Appellants' failure to submit an instruction on taxability of personal injury awards is therefore fatal to successful prediction of reversible error on this point on appeal.

Appellants contend that they were relieved of the responsibility to request an instruction because the trial court had previously granted a motion in limine foreclosing questioning of plaintiff's witnesses about the tax implications of plaintiff's economic loss. The function of a motion in limine is to preclude introduction of prejudicial matters to the jury. *Bridges v. The City of Richardson,* 163 Tex. 292, 354 S.W.2d 366 (1962). Rulings on the motion, however, occur before the point at which the evidence would be admitted or rejected. The motion is therefore preliminary and advisory in nature until the point of trial at which the evidence would have been admitted but for the motion in limine. Only at such time can the trial judge finally determine if the questioned evidence is admissible considering the facts and circumstances of the case before him. It is thus incumbent upon a party aggrieved by an order in limine to raise the issue at the appropriate time during the trial, either by objecting when the challenged evidence or testimony is admitted or by making an offer of proof of the excluded matter. *Messler v. Simmons Gun Specialties, Inc.,* 687 P.2d 121 (Okl.1984). Error is committed, if at all, when in the course of the trial the court rules on the matter. See *Teegarden v. State,* 563 P.2d 660 (Okl.Crim.1977), *Control Data Corp. v. International Business Machines Corp.,* 421 F.2d 323 (8th Cir.1970).

The appellants contend the size of the award of $2.3 million to plaintiff Bill Middlebrook is excessive, unsupported by the evidence, and indicative that the award is the result of passion and prejudice. In a two-pronged attack on the size of the award, appellants contend the trial court

failed to issue an instruction that the award for loss of future earnings should be reduced to present worth, and further that the award is unsupported by the evidence.

■ In regard to the issue of present worth, it is noted that defendants failed to cross-examine plaintiff's economist as to the present worth of the lost future earnings totaling $1,956,373 in the event plaintiff retired at age 65, and $2,907,731 if he retired at age 70. An examination of the transcript discloses no testimony as to the fact of the present worth of any award by direct testimony, or as mentioned, by cross-examination. The rate of interest to be used in computing present value of future damages is ordinarily a question of fact which is to be determined by a jury upon the basis of evidence presented. *Chesapeake & Ohio Ry v. Kelly*, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916). We additionally find no objection to the court's damage instruction as given. Appellant requested a damage instruction which also did not mention reduction to present worth and simply stated:

> "The total amount of damages which you arrive at from the evidence, if any, must be damages which you find were directly and proximately caused by the defendants through their negligence, if any, and which must not be oppressive or unconscionable, but *which will fairly and reasonably compensate the plaintiffs* insofar as the same may be computed in money ..." (Emphasis added.)

The appellees point to *Chicago, Rock Island & Pacific Ry Co. v. Hawes*, 424 P.2d 6 (Okl.1967), in which the preceding emphasized language was used in instructing the jury. This court noted that the defendants' requested instruction failed to mention present value. Quoting from *Hawes, supra*, at 14, the following statement is found:

> "... [I]n this jurisdiction, defendants who fail to request the instructions they desire on 'allowable damages' are not in s position on appeal to complain of the trial court's failure to give them. We

have specifically applied this rule to the subject of instructions on present value."

■ As noted in the discussion of the preceding allegation of error, once the court has instructed generally, it is incumbent on the parties to request a more specific instruction. Appellant urges such an argument "ignores the recent Tenth Circuit case of *Hoskie v. United States*, 666 F.2d 1353 (1981), which provides that the court has a duty to instruct the jury to reduce future earnings to present value and does not restrict the raising of such an issue on appeal." Upon examination of this recent case we find it to be a federal tort claims action brought in New Mexico State Court. Determination of damage is made by Federal District Court according to the law of the state in which the tort occurs. 28 U.S.C. § 1346(b), *Hoskie, supra; Foskey v. U.S.*, 490 F.Supp. 1047 (D.C.R.I.1980) (medical malpractice). Thus we find that appellants' citation to *Hoskie, supra*, is misplaced, and failure to request an instruction on reduction to present value and present evidence thereof is fatal to demonstration of reversible error on appeal. The fact this court is committed to the rule that a present value damage instruction is not a fundamental issue which can be raised at the appellate stage is illustrated by the recent case of *Walker v. St. Louis-San Francisco Ry Co.*, 646 P.2d 593 (Okl.1982). There it was held that failure to give such a *requested* instruction was not reviewable where defendant failed simply to object to the damage instructions as given, citing 12 O.S.1971 § 578.

■ In regard to the allegation that the size of the award is unsupported, we note that appellants' contention in this regard fails to refer to the evidence of plaintiff which is supportive of the award, but relies upon evidence which the jury chose not to rely upon. There was evidence that plaintiff Middlebrook was totally disabled from participation in gainful employment. Previously the lost wages testified to have been mentioned, and even in the absence of future medical expenses and past and future pain and suffering, are sufficient to

justify the size of the damage award made by the jury in this case. The record contains evidence of past medical bills of $23,285.70 and future medical expenses of $45,928.43. In reference to pain and suffering, this Court has recognized that such matters are difficult to quantify and the jury must be allowed a wide latitude in evaluating them. *Missouri-Kansas-Texas Railroad Co. v. Miller*, 486 P.2d 630 (Okl.1971).

Appellants contend that the trial court erred in overruling the demurrer and motion for directed verdict of J.L. Richardson, M.D., and Bone and Joint Orthopedics, Inc., his corporation. It is contended there is no evidence in the record which supports a judgment against these defendants. The appellants state the demurrer and motion for a directed verdict should have been sustained because Dr. Richardson's agreement that surgery should have been done cannot be considered a causal factor in the injury because Dr. Imler had decided to operate a month before Dr. Richardson was brought into the case. However, the surgical procedure was not undertaken until after Dr. Richardson's recommendation was made. If the cervical spinal operation was the wrong procedure, Dr. Richardson did have an opportunity to object to it. Rather, what the defendant did do was approve of the procedure and participate in the surgery.

It is submitted that the plaintiff's expert testified that Dr. Richardson's sole negligence was recommending the surgery. The record demonstrates plaintiff's expert testified that both the decision to operate and the surgical procedure itself were negligent:

"My opinion is that Dr. Richardson, in his recommendation of 12–18–76 and in his participation on the surgical procedure carried out December 23, 1976 departed from standard medical care."

█ The appellants would deny that Dr. Richardson participated in the allegedly erroneous surgery, attempting to separate Dr. Richardson's fusion graft from Dr. Imler's partial laminectomy, unsuccessfully. Both doctors testified that each assisted the other. Further, Dr. Imler testified that the decision not to reoperate after the bad result became apparent was a joint decision. One of the negligent acts alleged and testified to was a failure to immediately perform corrective surgery to alleviate the condition. Accordingly, the trial court did not err in overruling defendant Richardson's demurrer and motion for directed verdict.

Two separate evidentiary questions are addressed in a proposition of error which is designed to show that relevant and competent evidence offered by defendants was improperly excluded from trial. The first relates to the trial court's failure to allow appellants to read the answers to leading questions in Dr. C's deposition. Dr. C., a Tulsa neurosurgeon, examined Middlebrook at his attorney's request. During discovery, the defendants took Dr. C's deposition. The doctor was listed as a prospective witness by the plaintiffs. Then, after the plaintiff rested without putting this doctor on the stand, the defendants read his deposition to the jury. They now claim that a "major portion" of the deposition was improperly excluded by the trial court on the ground the questions were leading.

Title 12 O.S.1981 § 2611(D), allows leading questions when a witness is "identified with an adverse party;" and the appellants contend that under the circumstances of the present case, Dr. C. was identified with the plaintiffs. The appellees, meanwhile, deny that the doctor was their witness.

█ We are not required to decide this question. If the doctor was not the plaintiffs' witness, then the leading questions were properly excluded. On the other hand, if the doctor was the plaintiffs' witness, the statute provides that leading questions "may" be used, indicating that the trial court has the discretion to allow them or not, depending on the circumstances. A comparison of the deposition with the transcript fails to establish an abuse of that discretion. While some of the omitted testimony might have been somewhat favorable to the appellants, other portions of it were generally unfavorable, and the

great body of it was neither. Most of the questions to which objections were sustained were either preliminary questions— abortive attempts to lay a predicate for something which was itself successfully admitted—or followup questions summarizing testimony previously given.

 The second alleged error relating to excluded evidence deals with offered testimony of two witnesses relating to Mr. Middlebrook's consumption of alcohol. The appellants attempted to put on evidence through two of Mrs. Middlebrook's doctors that the Middlebrooks had experienced problems arising from Bill's consumption of alcohol. These witnesses were not listed on the pretrial order. In *Short v. Jones*, 613 P.2d 452 (Okl.1980), this Court upheld the District Court's refusal to allow an unlisted witness to testify, noting that the District Court has the power to enforce its own pretrial order. Rule 5(c)(3) of the District Court is specifically designed to prevent surprise testimony. Here, as in *Short*, we find no abuse of the District Court's discretionary power.

 Appellants contend that the testimony was rebuttal testimony, noting such witnesses need not be listed. The attempt to introduce this evidence was during the defendants' case-in-chief and not during rebuttal. 12 O.S.1981 § 577 Fourth. Second, the evidence would not properly be categorized as rebuttal evidence in the portion of this action for recovery of loss of consortium. Defendants read from the deposition of Mrs. Middlebrook and they chose to read a portion in which she states Bill did not have such a problem. Rebuttal evidence is that class of evidence which has become relevant only by virtue of evidence introduced by the adverse party, and its function is to explain or repel evidence of the adverse party. *Poppy v. Duggan*, 109 Okl. 104, 235 P. 165 (1925); *Townsend v. cotten*, 180 Okl. 128, 68 P.2d 790 (1937). In this instance, the offered testimony is not rebuttal matter for it has no relation to repelling evidence of the adverse party. ·

The trial court properly excluded the witness as not listed in the pretrial order.

Appellants sought to introduce the evidence of the doctors on rebuttal as impeachment of the credibility of Bill Middlebrook. The offer of proof relates to statements of Mrs. Middlebrook to those doctors, supposedly to show that Middlebrook's consumption of alcohol was affecting his relationship with his family. During the trial the Court reconsidered his motion in limine prohibiting this information from reaching the jury. Plaintiff's counsel commented that had the motion not been in effect, he would have covered the subject and to allow the defendants to elicit that information prejudiced his case. Nevertheless, defendants asked questions in this area and did not obtain information which the offer of proof could have impeached on rebuttal. The testimony of Bill Middlebrook on cross-examination disclosed: 1. He did drink. 2. He had never been told he had cirrhosis of the liver. 3. He had previously hurt himself while drinking. 4. He drank at home. 5. He felt it did not affect his work. 6. The drinking *did* create a problem for him at home. 7. His wife objected to his drinking.

 The excluded testimony of the doctors was designed to show that Bill did indeed drink at home and that his wife did object to it very much. Consequently, the appellants' attempt to establish error in the trial court's ruling that those unlisted witnesses could not be utilized under the guise of rebuttal witnesses is rejected. Their testimony would have been cumulative and would not have repelled the plaintiff's testimony on cross examination.

 The appellants contend the trial court abused its discretion by failing to grant numerous motions for mistrial and in failing to grant a new trial because of misconduct of plaintiffs' counsel. The thrust of the proposition is that appellants did not get a fair trial because opposing counsel deliberately prejudiced the jury. A reading of the transcript in its entirety does not support this contention. The trial was quite protracted and sharply contested by both sides. While the attorneys occa-

sionally overstepped the traditional bounds of judicial decorum by their animated presentations, when the case is viewed as a whole the appellants received a fair trial. Each individual argument will not be explored here. The appellants' citations of law in this regard are correct but they are by and large general. Appellants contend each to be prejudicial, reversible error on its face—none are when taken in context. First of these prejudicial incidents discussed is plaintiffs' counsel accusing Dr. Richardson of perjury in the presence of the jury. The exchange started with plaintiff's counsel asking the doctor if he ever told plaintiff his injury was caused by swelling of the spinal cord cutting off the flow of blood much as a leg can swell inside a cast. Several times the doctor denied having done so. The accusation was made and a tape of the exact analogy was played. The doctor admitted it was his voice on the tape. Appellants contend the tape did not impeach the doctor's testimony, yet the analogy the doctor denies is exactly the analogy he used in the telephone conversation. The statement is material to the cause of the injury and survives the test of admissibility used in *Barks v. Young*, 564 P.2d 228 (Okl.1977), and *Harris Irby Cotton Co. v. Duncan*, 57 Okl. 761, 157 P. 746 (1915). The statement was admissible for a purpose other than impeachment—causation.

▓▓ Next, defendant contends plaintiff asked a prejudicial and inflammatory question "clearly beyond the pale of proper inquiry." This exchange started with plaintiffs' counsel asking Dr. Imler if neurosurgery required the highest degree of care and if the doctor exercised such care. In response to an affirmative reply the attorney asked if the doctor did not once prepare a woman patient for surgery and shave her head, despite the fact it was not his patient. Defendant objected and the question was not answered, and the jury was admonished to disregard the question. Generally posing questions which contemplate answers which are neither competent, relevant or material does not ordinarily constitute reversible error, but when such questions relate to a material issue and are prejudicial, reversible error may result. *Nash v. Hiller*, 380 P.2d 77 (Okl.1963). It is important to note the improper question was not answered, and the trial court immediately admonished the jury to disregard the statement. Ordinarily an admonition to the jury to disregard an improper argument cures any prejudice which might be created thereby since it cannot be presumed as a matter of law that the jury will fail to heed the admonition given by the court. Given the protracted length of this case coupled with the court's admonition to disregard the *unanswered* question, the trial court did not err in refusing to grant a mistrial and overruling the motion for new trial on this basis.

▓▓ It is also alleged that plaintiff harrassed Dr. Kugler to the point he started weeping, and that as a result both parties moved for a mistrial. Failure to grant the mistrial is alleged to be error under this circumstance, citing *Davis v. Sams*, 542 P.2d 943 (Okl.1975). There the Court found it was an abuse of discretion to refuse to grant a mistrial where both parties so moved, but in a case which could be retried in two hours (not six weeks) where jurors observed an attorney attacking opposing counsel and an episode of abusive and profane language by one counsel to the other. Here the episode was the culmination of two days testimony in which Dr. Kugler was repeatedly evasive and unresponsive and was obviously a difficult witness. The exchange of mistrial motions came at a tense portion of the trial. To grant a mistrial would not have been justified solely because two counsel simultaneously moved for a mistrial at a tense part of a long trial.

▓▓ Appellants also propose reversible error on the fact that plaintiffs' counsel elicited facts bearing upon the costs incident in bringing this action. In reference to this argument, it is sufficient to note that Vol. 3, p. 322 of the transcript discloses this subject was first raised by appellants. Errors which an appealing party

has invited or provoked will not entitle that party to a reversal of judgment where it does not plainly appear that the verdict was influenced by the remarks. *Sisler v. Whitten,* 393 P.2d 497 (Okl.1964). In addition to this basis for refusing this proffered error, it appears that those remarks were not properly objected to at time of trial. *Parris v. McCallay,* 424 P.2d 62 (Okl.1967); *Garret v. Lacquement,* 306 P.2d 696 (Okl.1957).

▪ The next ground for the new trial is, as appellant has stated in his brief: "The trial court simply sat back and passively allowed Mr. Michaud to proffer one of the most objectionable and prejudicial closing arguments ever uttered in an Oklahoma courtroom." Be that as it may, a review of the closing argument leads this Court to conclude that the argument is vivid and animated, differing only little from that of the defendants, and free of reversible error.

▪ Appellants contend this verdict and judgment should be vacated and a new trial granted by virtue of the failure of the trial court to control the proceedings and enforce courtroom decorum in an acceptable manner. Intertwined in this point is an accusation that plaintiffs' counsel deliberately engaged in improper conduct in the courtroom specifically calculated to inflame the jury and incite prejudice against the defendants, for which a new trial should be granted. Briefly stated, the record simply does not support this serious and professionally damaging allegation of deliberate patterns of misconduct on the plaintiffs' part. The record does demonstrate in this regard that the cause was closely contested and the conduct of both plaintiffs' attorney and defendant Imler's attorney managed to keep the jury alert during this long and complicated case by the sincerity with which they prosecuted their respective positions. While this Court encourages only a level of courtroom decorum which fosters respect for the profession and institutions of common law, it must be recognized that different counsel conduct trials in their own differing styles. Conduct of counsel is

a matter to be left largely within the discretion of the trial judge. *Hazelrigg Trucking Co. v. Duvall,* 261 P.2d 204 (Okl. 1953.) Such conduct is not ordinarily grounds for reversal unless it substantially influences the verdict or denies the defendant a fair trial. The ultimate question is whether counsel's remarks result in actual prejudice. This determination rests with the trial judge and the appellate court will not reverse that determination unless it clearly appears that the verdict was so influenced, considering all pertinent facts and circumstances in the record. *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48 (Okl.1976). See also *Willis v. Fried,* 629 P.2d 1255 (Okl.1981). Under these guidelines, we find the verdict was not affected by prejudice and the defendant did receive a fair trial.

▪ Various incidents involving the jury are offered as grounds for reversal of the denial of the new trial motion, such as refusal to dismiss an alternate juror for cause, failure to sequester the jury, and contact between plaintiffs' counsel and a juror's husband. In respect of failure to dismiss a juror for cause, it is noted the juror had a child which was permanently injured by a doctor, but she directly responded to the trial court that she would follow the law and the evidence and "do the right thing." Additionally, the juror was an alternate and did not participate in the deliberations. Defendants' statement that there was no way to know what prejudice she may have caused is sheer speculation. For the same reason, a conversation in the hall between Mrs. Middlebrook and the alternate juror on a non-germane topic does not demonstrate prejudice. The decision not to sequester the jury in a trial of this length has been reviewed from the record and is found not to constitute an abuse of discretion. Similarly, plaintiffs' attorney's making a conciliatory reply to a juror's apology for becoming ill the previous day in court does not arise to the dignity of demonstrating either prejudice or abuse of discretion on the part of the trial court in refusing a new trial for that reason.

*Watts v. Elmore,* 198 Okl. 141, 176 P.2d 220 (1947). There exists an allegation that the court erred in refusing to sequester the jury after deliberations began and plaintiff and his attorney were seen talking to a juror's husband. The appellants have failed to demonstrate prejudice from this ruling inasmuch as the trial judge immediately examined the husband in chambers and he stated under oath he would not communicate with his wife concerning the transaction.

■ The last discussed issue relating to jury prejudice deals with a juryman's disclosure to the news media which the appellants assert reveals he concealed his prejudice against the medical profession. The juror was deposed and a motion for new trial on the ground of newly discovered evidence was filed, which was dismissed as not in compliance with 12 O.S. 1981 § 655 providing that application shall be by petition on which *summons shall* issue. No summons was issued and therefore no action was commenced within thirty days after discovery as required. The trial court correctly granted the motion to dismiss. Additionally, this error is raised on appeal in an amended petition in error which has been dismissed in this court and the error alleged is not properly before the court on appeal.

■ Appellants raise several arguments relative to the propriety of the instructions given to the jury. The first offered error is that the trial court failed to define the issues of the case but only summarized the pleadings, contra to *Wetsel v. Independent School District I–1,* 670 P.2d 986 (Okl.1983). In *Wetsel,* this Court stated it is not good practice to formulate the issues by reading at large from the pleadings and trial courts should be extremely wary of the risk of error involved in that practice. Obviously, this Court did not imply that to do so invariably constitutes reversible error. A review of the instructions as a whole reveals the factual issues of this action are fully outlined. As in *Wetsel, supra,* and *Marathon Battery Co.*

*v. Kilpatrick,* 418 P.2d 900 (Okl.1966), the error does not necessitate reversal.

Appellants contend that Instruction No. Six and the last paragraph of No. Seven are repetitive and thus erroneous under *Dippel v. Hargrave,* 206 Okl. 26, 240 P.2d 1070 (1952). Examination of the two leads to the conclusion that the two are cross-referenced and not repetitive. In any event, this issue is not preserved for appellate review. Appellant objected to Six only on the basis that Four, Five, Six and Sixteen instructed on *res ipsa loquitur* as well as specific negligence. No objection was raised relative to Instruction No. Seven.

■ Instruction No. Nine is argued to be reversibly erroneous because it is vague, confusing and contradictory, citing *Lewallen v. Cardwell,* 325 P.2d 1074 (Okl. 1958). The instruction is susceptible to a clearer composition, but it is neither an abstract statement of law unconnected with the facts nor fatally confusing. As stated in *Lewallen, supra,* where it appears the instructions taken as a whole do not establish that the jury was misled or the complaining parties' rights were prejudiced, the verdict will not be set aside.

Instruction No. Ten was, in part, as follows:

"You are instructed that every surgeon taking part in an operation is liable for his own conduct and also the wrongful acts or omissions, if any, of other surgeons observed by him without objection to said wrongful acts or omissions...."

The appellants flatly state, without authority, that the above language is erroneous. The instruction is precisely in line, however, with *Rhodes v. Lamar,* 145 Okl. 223, 292 P. 335 (1930). In the first syllabus of *Rhodes,* this Court made the following statement:

"[S]ince defendants [surgeons who allegedly allowed a patient to swallow a light bulb during surgery] served together by mutual consent, each became liable for his own conduct and for the wrongful acts or omissions of the other which he observed and let go without objection, or

which, in the exercise of reasonable diligence, under the circumstances, he should have observed."

As discussed earlier, Dr. Imler and Dr. Richardson both testified that each assisted in the other's surgical procedure. The trial court was correct to regard them as joint tortfeasors.

The appellants devoted a significant portion of their defense to attempting to establish that Middlebrook had a drinking problem. In Instruction No. Twenty-Two, the trial court told the jury that the evidence concerning drinking "was received only insofar as the same may or might tend to relate to the credibility of the plaintiff, Bill R. Middlebrook, the causation of the ruptured cecum, and/or the claim for damages on the part of the plaintiff, Melynda K. Middlebrook, only, and should not be considered by you, if at all, for any other purpose."

The appellants wanted to apply this evidence to Middlebrook's life expectancy. There was no evidence before the jury as to decrease of life expectancy by virtue of his past alcohol consumption, and to enlarge the instruction so as to allow reduction of the mortality table life expectancy would have been outside the issues of the case. Accordingly, no error exists by virtue of the limiting instruction.

## II

### LOSS OF CONSORTIUM

Melynda Kay Middlebrook sought damage recovery for loss of consortium in the amount of one million dollars. The jury awarded her $175,000.00 on this cause of action. The appellants demurred to the evidence presented in support of this claim on the basis of the fact that Melynda Middlebrook did not testify in support of her claim, citing *Hinkle v. Hampton*, 495 P.2d 117 (Okl.1972). *Hinkle* does take note of the failure of the plaintiff spouse to testify as to his damages, but falls short of requiring the spouse's testimony for a recovery of loss of consortium. *Hinkle, supra,* at p. 119 states: "Plaintiff did not

testify in the case at all, and there is no other evidence as to what the extent of such loss to him was, if any." This court has recently noted that the simple failure of a plaintiff in a loss or consortium action to testify is not, in and of itself, fatal to such action. In *Walker v. St. Louis-San Francisco Ry Co.*, 646 P.2d 593 (Okl.1982), this court cited with approval *Hinkle, supra.* Here the appellants contend that their demurrer to the evidence should have been sustained. Upon review of that contention it is incumbent upon this court to examine the evidence in the light most favorable to the plaintiff and if there is any competent evidence or reasonable inference from the evidence tending to establish a cause of action, the demurrer is correctly overruled. *Okla. Transportation Co. v. Claiborn*, 434 P.2d 299 (Okl.1967); *Horn v. Sturm*, 408 P.2d 541 (Okl.1965). This court has reviewed the record for evidence of Mrs. Middlebrook's loss of consortium. Without her testimony, we do find evidence of her loss of the services of her husband, which range from impairment of conjugal fellowship to loss of the physical services of a husband and domestic handyman which the jury could, and did, conclude were compensable.

The trial of this case was six weeks long and hotly contested. It would perhaps be unrealistic to expect such a case to be completely free of unfortunate incidents. The occurrence of such incidents, however, does not automatically necessitate a new trial. A careful review of the transcript in this case compels one to conclude that while the appellants may not have gotten a perfect trial, they did get a fair one. Their claims of painstaking care and lack of negligence were fully and fairly put before the jury, who weighed the evidence under acceptable instruction and returned a verdict which is supported by competent evidence. The judgment of the trial court is AFFIRMED.

DOOLIN, V.C.J., and LAVENDER and WILSON, JJ., concur.

OPALA, J., concurs specially.

HODGES and SUMMERS, JJ., and HUNTER, Special Judge, concur in part and dissent in part.

SIMMS, C.J., dissents.

KAUGER, J., disqualified.

OPALA, Justice, concurring.

Although I concur in today's judgment and in the court's pronouncement, I would *add* to the text of the opinion that in trials conducted *after* the mandate herein shall have been issued the jury *shall* be informed that personal injury awards are exempt from taxable income. In the federal court system an instruction so charging the trier of fact is mandated by case law. *Norfolk & Western Railway v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 [1980] and *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 [1981]. The federal rule is gaining state-court approbation.[1] We should adopt it because it "furthers strong ... policies of fairness and efficiency in litigation ..." of personal injury claims.[2]

SIMMS, Chief Justice, dissenting:

I join with the views expressed by Justice Summers, but dissent for the additional reason that an instruction on res ipsa loquitur was not appropriate in this action. Through the testimony of expert witnesses, plaintiff presented evidence of specific acts of negligence on the part of the defendant. Res ipsa loquitur, which supplies an inference of negligence when specific evidence is not available, is not necessary or permissible in a case such as this.

Res ipsa loquitur is a rule of evidence. It is a traditional rule of justice and necessity which is applied in those peculiar situations where the proof of the negligent act is within the defendant's power to control and beyond the plaintiff's. The purpose of the doctrine is to aid plaintiff in making a prima facie case of negligence on the part of defendant, without proof of specific acts of negligence, by allowing the trier of fact to infer negligence as legitimate deduction of fact from those fundamental facts which are established by direct evidence.

While in an ordinary negligence case each act or omission alleged to constitute negligence must be specifically pleaded and proved, in a res ipsa loquitur case a permissive inference of negligence replaces direct evidence. See, *Flick v. Crouch,* Okl., 555 P.2d 1274 (1959); *E.S. Billington Lumber Co. v. Cheatham,* 181 Okl. 402, 74 P.2d 120 (1937).

I cannot agree with the majority view that Title 76, O.S.1981, § 21, authorizes a res ipsa loquitur instruction in a medical malpractice action such as this, where direct evidence of specific acts of negligence is presented. If 76 O.S.1981, § 21 authorizes plaintiffs in malpractice actions to put on proof of negligence *and* receive a presumption of negligence, then to my mind substantial questions are raised as to the fairness of the trial defendants will receive. Here, as in *Flick v. Crouch,* supra, there is no room for an inference of negligence. As with all other cases brought by a plaintiff alleging injury by reason of specific acts of negligence, plaintiff must succeed, if at all, by reason of the jury's belief in plaintiff's version of the law suit as presented by his witnesses.

I agree with appellant's analysis of 76 O.S.1981, § 21, that the statute does not replace, but simply supplements our traditional common-law rule of res ipsa loquitur. It was intended as a slight refinement and modification of res ipsa loquitur in its application to medical malpractice actions. It was meant by the legislature to be superimposed over existing precedent, not to become a new independent rule in and of itself. The statute is intended to apply

1. *Stowell v. Simpson,* 470 A.2d 1176 [Vt.1983], and annot. in 16 A.L.R.4th 589–621; see, Vaughan, *Tax Issues of Personal Injury and Wrongful Death Awards,* 19 Tulsa L.J. 702, 714 [1984].

2. The so-called *Liepelt* instruction, *simple and brief,* states: "[Y]our award will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award." *Liepelt,* at 444 U.S. 492, 100 S.Ct. at 756.

only in an action which is an appropriate res ipsa loquitur case. See, *Lambert v. Midwest City Memorial Hospital Authority* (10th Cir.), 671 F.2d 372 (1982).

I am persuaded by appellant's suggestion that a recent law review article, Friedman, "Professional Malpractice in Oklahoma Part I: The Medical Profession", 2 Okla. City Univ. Law Review 21 (1977), fully explains the motiviation of the legislature in passing this statute. The author points out that Section 21 is generally recognized as a response to the malpractice crisis, and that the legislature intended to strengthen the direction previously taken by our decisions in malpractice cases, and to eliminate some confusion and resolve any lingering ambiguities which had developed in this uniquely medical area.

Sub-section 1, Friedman notes at page 29, resolved the ambiguity some found in *St. John's Hospital and School of Nursing v. Chapman*, Okl., 434 P.2d 160 (1967), by declaring that in malpractice actions, negligence is considered a presumption not just an inference. Sub-section 2 adopts the rule of *Ybarra v. Spangard*, 25 Cal.2d 486, 154 P.2d 687 (1944), allowing application of the presumption of negligence against multiple defendants. The third sub-section, allowing trial courts the discretion to require expert testimony to prove foundation facts beyond the knowledge of the average person, is, in the author's opinion, a legislative response to *Martin v. Stratton*, Okl., 515 P.2d 1366 (1973).

I do not agree with the majority that § 21 requires a departure from our traditional rule prohibiting a res ipsa loquitur instruction in a case involving specific evidence of negligence. Today's ruling raises serious questions about the fairness of a trial in a medical malpractice action, where with proof of injury, plaintiff is able to put on specific evidence of negligence *and* receive a presumption of negligence.

1. 495 P.2d 117 (Okl.1972).

2. Id., at 119.

3. See *Walker v. St. Louis San Fran Ky,* 646 P.2d 593 (Okl.1982).

SUMMERS, Justice, dissenting in part and concurring in part.

I must dissent from that portion of the opinion awarding Mylynda Kay Middlebrook $175,000 for loss of consortium. She elected not to testify in support of her claim. In *Hinkle v. Horton* [1] the husband sued for loss of consortium. The only testimony before the jury was that of the injured wife. This court said:

... [W]e find the evidence to be insufficient to support an award therefor. True, Mrs. Hinkle testified concerning changes in her sexual abilities subsequent to the wreck and a general reference to her inability to perform certain other activities. But such evidence never ripened into a compensable basis for a recovery by plaintiff because it remained unnourished by evidence concerning what plaintiff *himself* lost in the way of consortium. Plaintiff did not testify in the case at all and there is no other evidence as to what the extent of such loss *to him* was, if any." (emphasis added) [2]

Assessment of damages for loss of consortium are among the most difficult to determine. Where the plaintiff herself declines to testify the verdict of necessity is based on speculation. The teaching of *Hinkle* is that a jury should not be allowed to speculate on whether or not a party is damaged by injuries to his or her spouse. Sometimes a consortium plaintiff is not damaged, even though the spouse was severely injured.[3] Large numbers of people spend good money each year to put away the companionship of their marital partner.[4] Unless the consortium plaintiff testifies the jury must speculate as to (1) whether she was damaged, (2) if so, how, and in what amount, or (3) whether she was in fact more unburdened than dam-

4. Oklahomans filed 35,198 divorce cases in 1980.

aged by the incident. The consortium issue should not have been submitted to the jury.

In other respects I concur in the opinion of the majority.

I am authorized to state that HODGES, J., and HUNTER, Special Judge, concur in these views.