James F. SQUYRES, Plaintiff-Appellee,

v.

Edward A. HILLIARY, Jr., Defendant-Appellant.

No. 77–1769.

United States Court of Appeals, Tenth Circuit.

Argued March 13, 1979.

Decided May 8, 1979.

Rehearing Denied July 13, 1979.

---

Judge, U. S. Court of Customs and Patent Appeals.

MARKEY, Chief Judge.

Appeal from judgment of the United States District Court for the Western District of Oklahoma on a jury verdict awarding Squyres $35,748.36 for injuries caused by Hilliary. Admission of certain testimony and denial of a new trial are challenged. We affirm.

### Background

Hilliary shot Squyres with a shotgun. At the time, Hilliary was mayor of Medicine Park, Oklahoma, where the shooting occurred, and owned the city hall, gas company, and telephone company. Squyres was twenty-four, had had several run-ins with the law, and had ill feelings toward Hilliary.

On the day of the assault, both parties had been drinking beer. Squyres drove with his wife and children to Hilliary's house. A violent argument ensued, and Hilliary went into a back room for his shotgun. Squyres, unarmed, left the house and walked to his car. Hilliary came out of the house and pulled the trigger, wounding Squyres in the right eye, shoulder, and neck.

At trial Squyres and his witnesses said there was a ten-year-old feud between Squyres and Hilliary, that Hilliary was responsible for harassment of Squyres' wife by Medicine Park police, and that Hilliary had coerced Squyres into building a new jail. Hilliary denied the existence of the feud and related incidents, and that he had any ill feelings toward Squyres. Hilliary said he fired in self-defense, believing Squyres was getting a gun from the car. His witnesses testified that Squyres was "no good" and had been on a violent, drunken binge prior to the shooting. In rebuttal, Squyres called three deputy sheriffs, who testified that Hilliary's reputation for truthfulness was poor.

William C. McAlister, of Rhodes, Hieronymus, Holloway & Wilson, Oklahoma City, Okl. (Russell B. Holloway, Oklahoma City, Okl., and Charles W. Jennings of Jennings, Robinson & Jennings, Lawton, Okl., with him, on brief), for defendant-appellant.

Charles J. Watts, of Procter, Fleming & Speck, Oklahoma City, Okl., for plaintiff-appellee.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and MARKEY,* Chief

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

Squyres alone testified to the nature and extent of his injuries. Neither side called a medical expert.

Hilliary's counsel, Holloway, objected to Squyres' testifying about his injuries and to the deputy sheriffs' rebuttal testimony. The judge limited Squyres' testimony, and, in accordance with F.R.Ev. 608(a),[1] allowed the deputy sheriffs' testimony.

After trial, Hilliary moved for judgment notwithstanding the verdict, for a new trial, and for remittitur, arguing that: "The verdict rendered was excessive and against the weight of the evidence and appears to have been rendered on the basis of passion or prejudice." The motion was denied.

### Issues

The issues are whether the district court erred in: (1) admitting Squyres' injury testimony, (2) admitting the deputy sheriffs' reputation testimony, and (3) denying the motion for new trial.

1. *The district court did not err in admitting Squyres' injury testimony.*

Squyres testified that, after he was shot, he was taken to the hospital, X-rayed, and treated, and that none of the three pellets which hit him were removed. When he testified that he still had eye pain, Holloway interrupted to protest any testimony not given by an expert linking the pain to a pellet. He stated: "[U]p to this point I have no objection. But, I simply call to the Court's attention, and insist his testimony be limited to that which is open and obvious." After a lengthy discussion, this side bar exchange occurred:

THE COURT: At the present state of the record, is there any reason to either strike any of his testimony or to admonish the jury, or is it sufficient just on the basis of this discussion to proceed in another line of inquiry, if you have concluded your inquiry?

WATTS (SQUYRES' COUNSEL): Well, I have approximately two other questions that it occasionally hurt him, but that's about it.

HOLLOWAY: I have no objection to the matter standing where it is now without any statement to the jury. If he proceeds, then I want to make an objection and ask for the jury to be admonished.

The judge proscribed one of the two questions mentioned by Watts. Thereafter, Squyres continued his testimony without objection.

■ Having twice stated that he had no objection to the record as it then stood, having threatened but failed thereafter to make any objection, Holloway cannot now complain that the testimony was admitted. *United States v. Van Scoy,* 482 F.2d 347, 349–50 (10th Cir. 1973).

2. *The district court did not err in admitting the deputy sheriffs' reputation testimony.*

The deputies' reputation testimony was given amidst considerable confusion. Holloway, on voir dire, examined the first deputy on his knowledge of Hilliary and how much time the deputy spent in Medicine Park. He then objected that the testimony was "incompetent, irrelevant, and immaterial" and that the deputy was not qualified respecting Hilliary's reputation. A discussion of Rule 608(a)(2) followed, with the court considering its applicability in recess. Holloway said: "I'm tempted to let him go on. I'm tempted to waive my objection and attack the witness on the basis of his opinion as being totally unsupported by anything specific on this earth." The court asked what he wished to do, but received no response.

Before recess, Watts, at the court's suggestion, had lain the foundation for his rep-

---

1. Rule 608. Evidence of Character and Conduct of Witness

(a) *Opinion and reputation of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limita-

tions: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

utation question. After recess, the deputy described Hilliary's reputation for truthfulness in the Medicine Park area as poor. There was no objection. On cross-examination, Holloway, having first attacked the deputy's basis for his opinion, went on to ask about Squyres' reputation for truthfulness. The deputy said it was bad.

The second deputy testified to Hilliary's poor reputation for truthfulness without objection. On cross-examination, Holloway questioned him about an interview with Hilliary immediately after the shooting, and about Squyres' reputation for truthfulness. The deputy testified that in his opinion, Hilliary had thought he was telling the truth at the interview, and that Squyres' reputation for truthfulness was bad.

Thus, concerning the first and second deputies, Holloway had effectively succumbed to the "temptation" he had described to the court. After the third deputy testified to Hilliary's reputation, this exchange occurred:

HOLLOWAY: Your Honor, may the record reflect that I have a continuing objection to all of the inquiries concerning themselves with reputation, and so on, in keeping with the record made at the Bench? I haven't done this continuously because I didn't think it was necessary.

THE COURT: No, sir, you may not have that kind of continuation, and you are called upon to make those objections. You asked for no continuing objection and you have none.

HOLLOWAY: I object to the testimony of this witness in that regard and ask it be stricken and the jury admonished.

THE COURT: Your objection comes a little late. On what basis is your objection made, Mr. Holloway? Is it on a lack of basis for forming an opinion on reputation, or is it—does it have to go specifically to its admissibility or inadmissibility under the Federal Rules of Evidence?

HOLLOWAY: It's the latter, if the Court please.

THE COURT: Well, on that basis you may have a continuing objection from this point forward.

Holloway then both attacked the credibility of the third deputy and questioned him about Squyres' reputation for truthfulness. The deputy said it was bad.

■ On this record, the district court reasonably concluded that Holloway had not preserved a continuing objection, or made timely objection to any deputy's testimony. Absent objection below, improprieties, if any, in the deputies' testimony cannot be raised here. *United States v. Jamerson*, 549 F.2d 1263, 1266–67 (9th Cir. 1977), F.R.Ev. 103(a)(1).

3. *The district court did not err in denying the motion for new trial.*

Hilliary alleges that certain evidence was calculated to appeal to the passion and prejudice of the jury. Squyres responds that the evidence was introduced "to demonstrate the Defendant's hatred and malice toward the Plaintiff at the time he pulled the trigger."

The complained-of evidence relates to Hilliary's influence in Medicine Park, Hilliary's control of the police department, and harassment of Squyres' wife by the police. Hilliary also complains of evidence not related to the shooting itself, *i. e.,* evidence of the feud between Squyres and Hilliary, and Hilliary's coercing Squyres to build a new jail.

Squyres' first witness was his wife. During direct examination, this exchange occurred:

WATTS: Let me ask you, Millie, if Mr. Hilliary and your husband had any differences between them prior to this shooting?

A. Yes.

Q. Do you know what they were?

A. For one thing, when J. F. [Squyres] was 14 years old Junior [Hilliary] had beaten him up in the middle of the street because he had a jacket on like a man had where someone was supposed to have robbed his laundromat, or something, and J. F. had a jacket on that was the same color.

Q. Do you know anything about anything else?

A. Just lots of little things.

Q. Did you ever have any problems after you were married to J. F. with the administration there in Medicine Park?

A. I never had before, but afterwards there was always something. Like I'd walk to the store with the children—

HOLLOWAY: Just a moment, please.

THE COURT: Just a moment, please.

HOLLOWAY: I have no objection to this line of inquiry as long as I am permitted to pursue it. I think it's incompetent, irrelevant and immaterial, but I'm waiving that objection.

THE COURT: I'm not sure I understand what your objection or comment is.

HOLLOWAY: He's going into her relationship with Mr. Hilliary, or whatever this may be, and I'm simply calling to the Court's attention the fact that I'm waiving the objection in order to be permitted to pursue it.

THE COURT: Proceed, please.

WATTS: Yes, sir.

On cross-examination, Holloway questioned Squyres' wife about harassment by the police and the feud between Squyres and Hilliary. Holloway made no objection based on prejudice to any of the testimony specifically complained of on appeal.

■ In a civil suit for assault and battery, a showing of malice is proper where punitive damages are sought, and to rebut a theory of self-defense. Because the evidence challenged on appeal tended to show malice on the part of Hilliary, it is relevant and therefore admissible. F.R.Ev. 402. *See also Evans v. Gaisford,* 122 Utah 156, 247 P.2d 431 (1952) (evidence of defendant's long-standing ill-will and resentment admissible to show defendant maliciously attacked plaintiff). Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . .," F.R.Ev. 403. Hilliary having failed to demonstrate the creation of prejudice, however, we are persuaded that no basis existed for exclusion of this evidence.

■ Arguing that prejudice was heightened thereby, Hilliary singles out these final argument statements by Watts:

Ladies and gentlemen, I don't say that James Squyres made the right decision in going to Mr. Hilliary's house that day in Medicine Park. I can imagine a certain amount of frustration on his part. He had had trouble with Mr. Hilliary and the administration of Medicine Park for a long time prior to that. Very shortly before the shooting he had problems to the extent that there was a police car following his wife down the street whenever she would walk out of the house with her little boy. He had even gone so far as to call a deputy sheriff to come out there and see if he could do something about it.

I will say that Mr. Squyres never had the height of cooperation out of the police and out of the administration there in Medicine Park.

It makes no difference what J. F. Squyres had done in the past of [*sic,* or] what Mr. Hilliary thought about J. F. Squyres as a person on the day of this incident. Even what Mr. Squyres said to him. That does not give a man permission to go out and shoot another one, or attempt to kill the man, regardless of whether you live in Medicine Park or not.

Sometimes the most important witness is the one who doesn't appear. Where was A. P. Tuck? [Police Commissioner of Medicine Park. Hilliary testified he called Tuck just prior to the shooting, and that Tuck arrived after.]

and this exchange:

Well, ladies and gentlemen, I suggest to you that the courtroom image of Mr. Hilliary is also much different than the man that you catch back there in Medicine Park, and I submit to you that it's extremely difficult for many of the citizens that live in Medicine Park to stay there.

Now, I'm not saying that it's impossible for all of them—

HOLLOWAY: If the Court please, there is not a word of testimony in the record to that effect, and I challenge the statement as beyond the record.

THE COURT: Either respond or move on to something else, Mr. Watts.

WATTS: All right, sir. [Remarks relating to testimony of the three deputies.]

The remarks of counsel during final argument are more fairly characterized as zealous advocacy than as prejudicial misconduct, and are not of the type, either standing alone or in conjunction with the complained-of evidence, that would require reversal. *Cf. Chicago, Rock Island and Pacific Railroad Co. v. American Airlines, Inc.,* Okl., 408 P.2d 789 (1965) (counsel's entire closing argument tended to submerge corporate identity of plaintiff by asking jurors to place themselves in plaintiff's position, and warned jury away from deciding case of factual issues); *Horany v. Paris,* Okl., 369 P.2d 636 (1962) (counsel deliberately and repeatedly injected improper questions reflecting on character of witness); *Harrod v. Sanders,* 137 Okl. 231, 278 P. 1102 (1929), *overruled on other grounds, Wolff v. Oklahoma Ry. Co.,* 184 Okl. 374, 87 P.2d 671 (1939) (counsel deliberately and repeatedly asked incompetent questions for purpose of intimating something that either was not true, or not capable of being proven if true).

Finding no error, we affirm the judgment.