**Jerry LAMBERT, Plaintiff-Appellant,**

v.

**MIDWEST CITY MEMORIAL HOSPITAL AUTHORITY, Defendant-Appellee.**

**No. 81–1145.**

United States Court of Appeals, Tenth Circuit.

Submitted Dec. 9, 1981.

Decided Feb. 10, 1982.

Rehearing Denied March 17, 1982.

Ben T. Lampkin and Kayla Bower of Lampkin, Wolfe, McCaffrey & Tawwater, Oklahoma City, Okl., for plaintiff-appellant.

Dale Reneau of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for defendant-appellee.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Jerry Lambert (Lambert) appeals from an adverse jury verdict entered in favor of Midwest City Memorial Hospital Authority (Hospital). This is a diversity action in which Lambert alleged that he was seriously and permanently injured as a result of negligent medical care he received at Hospital.

On April 11, 1978, Lambert, then twenty years of age and employed as a construction worker, fell off a roof at the General Motors plant located in southeast Oklahoma City. The record does not establish the exact height from which Lambert fell. Various witnesses approximated his fall to be between twenty and thirty-five feet.

An ambulance owned and operated by Hospital was dispatched to the scene of the accident whereupon the attendants provided "on the scene medical attention" to Lambert, and he was then transported to Hospital's emergency room for observation and treatment. At the time of admission, Lambert was delirious and incoherent; however, he could move his arms and legs.

Lambert received treatment in Hospital's emergency room from approximately 2:13 p.m. until approximately 7:00 p.m. This treatment was, apparently, provided under the supervision and guidance of Dr. J. D. McKean, Hospital's emergency room physician on call at the time of the accident. Lambert was subsequently transferred from Hospital to St. Anthony's Hospital for additional treatment. During the course of Lambert's hospitalization he became paralyzed.

On April 10, 1980, Lambert filed suit against Hospital and various doctors and professional corporations who had provided medical care to him. Within his complaint,

Lambert alleged that he was paralyzed as a result of the negligent treatment afforded him by Hospital and its staff. Prior to trial, Lambert settled with Dr. McKean. Thereafter, Dr. McKean and various other individuals and professional corporations were dismissed from the suit.

Lambert proceeded to trial against Hospital, alleging, *inter alia*, that Hospital, by and through its agents, servants, and employees: failed to properly diagnose the nature and extent of his injuries and, as a result thereof, failed to properly treat his injuries; failed to seek consultation from medical experts in accordance with the standards of good medical practice; failed to meet the standard of care of health providers in the same or similar circumstances; and allowed him to be moved in such a manner that he became a paraplegic.

Hospital defended on the basis that neither it nor any of its employees were guilty of negligence in treating Lambert; that the treatment administered Lambert during the course of his stay at Hospital was not the proximate cause of his paraplegia; and that Lambert's paraplegia was caused by his fall.

During the course of the trial, Lambert presented expert testimony supportive of his allegations that the treatment administered to him during the course of his stay at Hospital gave rise to his paraplegic state. Conversely, Hospital presented evidence supportive of its defense that Lambert was properly treated in accordance with sound medical practice and that the paraplegia was a direct result of his fall.

Lambert's request that the trial court instruct on the doctrine of *res ipsa loquitur* was denied.

In the course of closing argument, Hospital's attorney stated:

... Well, the man has settled with Dr. McKean, the terms of the settlement are not for you to know, but, the settlement has been made. And, we can't really, I guess—we can't really speculate on that, because we don't want to speculate. But, I think you can assume the man will have no problems. That's up to you. We can't say one way or the other. But, anyway, let's get down to the evidence in this case.

[R., Vol. XXXIV at pp. 600–601].

Immediately after counsel for Hospital had completed his closing argument, Lambert's counsel objected to the settlement reference:

MR. LAMPKIN: Let me make my objection. I object to Mr. Reneau stating there was a settlement made with Mr. McKean—Dr. McKean, and that they can feel that this man will have no problems from here on out, I'm talking about the Plaintiff.

THE COURT: Well, let me say this, that I think that the statement was improper, but if you don't ask for a mistrial, there is no way—

MR. LAMPKIN: Would you have given me one?

THE COURT: Let's go ahead.

[R., Vol. XXXIV at p. 609].

The trial court subsequently instructed the jury:

... As you have been previously told, the plaintiff has entered into a settlement with the emergency room physician, J. D. McKean, Jr., M.D. You are instructed that the mere fact that the plaintiff has entered into this settlement does not necessarily relieve the defendant, Midwest City Memorial Hospital Authority, from responsibility for damages, if any, sustained by the plaintiff.

In the event that you find that Midwest City Memorial Hospital Authority was guilty of negligence as defined herein which caused, combined or concurred with the negligence of J. D. McKean, Jr. M.D. to proximately cause plaintiff's injuries and damages, then you are instructed to fix the total amount of damages which you find he has sustained, without regard to the settlement with Dr. McKean. At a later time, the court will deduct the amount of plaintiff's settlement with Dr. McKean from the total amount of your verdict.

[R., Vol. I, Instruction No. 5, at p. 115].

On appeal Lambert contends: (1) Hospital's counsel improperly commented on

Lambert's settlement with Dr. McKean during the course of closing arguments; and (2) the trial court erred in refusing to instruct on the doctrine of *res ipsa loquitur.*

I.

Lambert contends that the reference by Hospital's counsel to his settlement with Dr. McKean made during the course of closing arguments was clearly improper, highly prejudicial, and, as such, requires that we reverse and remand for a new trial. We agree.

■ We note at the outset, that both Lambert and Hospital, in addressing this issue, do not set forth federal case law, but, rather, rely exclusively on the law of the State of Oklahoma. However, the question of whether the actions of a trial court provided an adequate remedy for an improper closing argument, involves a procedural issue controlled by federal, not state law. *Ward v. H. B. Zachry Const. Company,* 570 F.2d 892 (10th Cir. 1978); *McDonald v. United Airlines, Inc.,* 365 F.2d 593 (10th Cir. 1966). In reviewing the issue of improper closing argument, we have exercised great caution in setting aside a judgment because of such remarks. We have held that even though an argument may be improper, a judgment will not be disturbed unless it clearly appears that the challenged remarks influenced the verdict. *Julander v. Ford Motor Company,* 488 F.2d 839 (10th Cir. 1973). *Thomson v. Boles,* 123 F.2d 487 (8th Cir. 1941), *cert. denied,* 315 U.S. 804, 62 S.Ct. 632, 86 L.Ed. 1204 (1942). *See:* 66 C.J.S. New Trial § 36.

*Julander, supra,* was reiterated in *Texas Eastern Transmission v. Marine Office, Etc.,* 579 F.2d 561 (10th Cir. 1978):

[A]ppellate courts should exercise great caution in setting aside a judgment because of remarks made by counsel in closing argument during a hotly contested case, and even though the argument be improper, the judgment should not be disturbed unless it clearly appears that the remarks in question unduly aroused the sympathy of the jury and thereby influenced the verdict.

*Julander v. Ford Motor Co.,* 488 F.2d 839, 842 (10th Cir. 1973).

579 F.2d at p. 567.

In applying this standard, we have consistently afforded trial counsel considerable leeway. In *Squyres v. Hilliary,* 599 F.2d 918 (10th Cir. 1979) we stated:

The remarks of counsel during final argument are more fairly characterized as zealous advocacy than as prejudicial misconduct, and are not of the type, either standing alone or in conjunction with the complained-of evidence, that would require reversal. *Cf. Chicago, Rock Island and Pacific Railroad Co. v. American Airlines, Inc.,* Okl., 408 P.2d 789 (1965) (counsel's entire closing argument tended to submerge corporate identity of plaintiff by asking jurors to place themselves in p.aintiff's position, and warned jury away from deciding case of factual issues); *Horany v. Paris,* Okl., 369 P.2d 636 (1962) (counsel deliberately and repeatedly injected improper questions reflecting on character of witness); *Harrod v. Sanders,* 137 Okl. 231, 278 P. 1102 (1929), *overruled on other grounds, Wolff v. Oklahoma Ry. Co.,* 184 Okl. 374, 87 P.2d 671 (1939) (counsel deliberately and repeatedly asked incompetent questions for purpose of intimating something that either was not true, or not capable of being proven if true).

599 F.2d at p. 923.

■ Reversible error, however, does occur when counsel's closing remarks introduce extraneous matter which has a reasonable probability of influencing the jury. *Ayoub v. Spencer,* 550 F.2d 164 (3d Cir. 1977), *cert. denied,* 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977), wherein the court stated:

The remarks of counsel were required to be confined to the evidence admitted in the case and reasonable inferences drawn therefrom. *Watn v. Penn. R. R. Co.,* 255 F.2d 854 (3d Cir. 1958); *Robinson v. Penn. R. R. Co.,* 214 F.2d 798 (3d Cir. 1954). Reversible error is committed

when counsel's closing argument to the jury introduces extraneous matter which has a reasonable probability of influencing the verdict. *Rommel-McFerran Co. v. Local U. No. 369, Int. Bro. of Elec. Wkrs.*, 361 F.2d 658 (6th Cir. 1966); *Twachtman v. Connelly*, 106 F.2d 501 (6th Cir. 1939).

550 F.2d at p. 170.

Applying these standards to the case at bar, we must hold that the closing argument remarks of Hospital's counsel were completely improper and prejudicial, mandating that the judgment in favor of Hospital be set aside. We are convinced that counsel's comments unquestionably influenced the verdict. *Julander, supra.*

This is not a case in which it can be said that the trial court's instructions adequately removed the prejudicial taint of the error. On the contrary, the trial court, unfortunately, in attempting to purge counsel's improper comments, compounded the error by instructing, *inter alia*, "In the event you find that ... Hospital ... was guilty of negligence as defined herein which caused, combined, or concurred with the negligence of J. D. McKean, Jr. to proximately cause plaintiff's injuries and damages ..." Dr. McKean's negligence was not stipulated to, and, of course, it was not an issue subject to adjudication at trial. The trial court erred in instructing the jury that Dr. McKean was actually negligent. Unless specifically stipulated to, such an instruction invades the province of the jury. This is particularly so in the instant case, inasmuch as Lambert presented substantial evidence upon which the jury could have reasonably determined that Hospital's negligence proximately caused, or was a factor in proximately causing his paraplegia.

## II.

Lambert contends that the trial court erred by refusing to instruct on the doctrine of *res ipsa loquitur*. We disagree.

Although the doctrine of *res ipsa loquitur* may apply in an action against a hospital, *St. John's Hospital & School of Nursing v. Chapman*, 434 P.2d 160 (Okl. 1967), its application is not justified here. 76 Okl.St.Ann. § 21 limits the application of the presumption of negligence in the rendering of medical care, as follows:

In any action arising from negligence in the rendering of medical care, a presumption of negligence shall arise if the following foundation facts are first established:

1. The plaintiff sustained any injury;

2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants; and

3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant.

If any such fact, in the discretion of the court, requires a degree of knowledge or skill not possessed by the average person, then in that event such fact must be established by expert testimony.

To be sure, Lambert did sustain an injury, paraplegia. However, we cannot hold that his injury was "proximately caused by an instrumentality solely within the control of the [Hospital]" nor can we hold that Lambert's paraplegia was proximately caused by his fall. As discussed, *supra*, both Hospital and Lambert presented evidence supportive of their respective contentions. Under these circumstances, the trial court did not err in refusing to instruct on the doctrine of *res ipsa loquitur.*

REVERSED AND REMANDED for a new trial consistent with the views expressed herein.