**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 25, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,

      Plaintiff-Appellant/Cross-
      Appellee,

v.

BRITT PAULK INSURANCE
AGENCY, INCORPORATED, a
foreign corporation,

      Defendant-Appellee/Cross-
      Appellant.

Nos. 07-7115 & 08-7000

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:06-CV-00215-JHP)**

---

Eric Mareshie (James K. Secrest, II, and Edward J. Main, with him on the briefs), Secrest, Hill & Butler, Tulsa, Oklahoma, for Plaintiff–Appellant–Cross-Appellee.

Joseph R. Farris (Paula J. Quillin, Thayla P. Bohn, and Jeremy K. Ward, with him on the briefs), Feldman Franden Woodard & Farris, Tulsa, Oklahoma, for Defendant–Appellee–Cross-Appellant.

---

Before **LUCERO**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

North American Specialty Insurance Co. ("North American") sued its general agent, Britt Paulk Insurance Agency, Inc. ("Britt Paulk"), and its limited agent, Argenia, Inc. ("Argenia"),[1] alleging that the latter two companies wrongfully caused North American to settle a bad faith lawsuit brought against it by two insureds. North American claimed that Britt Paulk and Argenia were liable for negligence and that Britt Paulk was liable for breach of contract and contractual indemnification. A jury returned verdicts in favor of North American and against Britt Paulk on all three claims.

After trial, consistent with the jury's verdict, the district court entered judgment in favor of North American on two claims: negligence and breach of contract. But the district court entered judgment in favor of Britt Paulk and against North American on the contractual indemnification claim, finding that it was duplicative of the breach of contract claim. Both North American and Britt Paulk appeal.

North American argues that none of its claims is duplicative of any other, and it therefore is entitled to the awarded damages on all three. Britt Paulk responds that there was insufficient evidence of causation to support any of the jury's findings, that exclusion of expert testimony and improper closing arguments require a new trial, and that in any event all three claims were

_____

[1] Argenia is not a party to this appeal.

-2-

duplicative and thus North American should be allowed to recover on one at most. In all respects, we conclude that North American is correct. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand.[2]

# I

Jerry and Nikki McDonald ("the McDonalds") had a farm. On this farm they had some chickens. They cooped these chickens in poultry houses, which were insured by North American. Two of the poultry houses were damaged as a result of blast mining in the area. North American's insurance policy was underwritten by Britt Paulk, who in turn employed Argenia as its sub-agent to deal directly with the McDonalds. In November 2003, Argenia's representative, Michael Alexander, was contacted about the damage to the McDonalds' property.

Upon learning of the property damage, Alexander contacted Curtis Barham, Britt Paulk's manager for the poultry property program. In response, Barham indicated to Alexander that blasting was not covered under the North American policy. Alexander then relayed that message to Jerry McDonald. North American was unaware of these conversations.

---

[2] Britt Paulk also appeals the award of attorneys' fees to North American. However, because the district court has yet to determine the amount of the attorneys' fees award, we lack jurisdiction over that portion of the appeal. Am. Soda, LLP v. U.S. Filter Wastewater Group, 428 F.3d 921, 924 (10th Cir. 2005) ("An award of attorneys' fees is not final and appealable within the meaning of 28 U.S.C. § 1291 until it is reduced to a sum certain.").

North American first learned of the McDonalds' losses in January 2004. After North American sent an independent adjuster, Bill Haneline, to inspect the poultry houses, Haneline reported that the McDonalds were not making a claim but providing notice that the damaged buildings would no longer be used for raising chickens. Approximately one month later, North American closed the McDonalds' claim file.

Unbeknownst to North American, Jerry McDonald continued to request that Argenia pay his claim. Yet, North American did not hear mention of the McDonalds again until early 2005 when they sued North American for breach of contract and bad faith denial of their claim.

After the McDonalds filed suit, North American determined that blasting was a covered peril, contrary to what Britt Paulk and Argenia told the McDonalds. North American then paid the McDonalds' policy limit of $205,000 for the property damage. As for the bad faith component of the lawsuit, North American and the McDonalds reached a mediated settlement of $1.2 million, down from the McDonalds' $2.3 million demand.

In May 2006, North American sued Britt Paulk and Argenia for breach of contract, negligence, and indemnification. North American alleged that it was forced to pay damages to the McDonalds on their bad faith claim because Britt Paulk communicated to the McDonalds that the property damage was not covered and failed to notify North American of the McDonalds' attempts to obtain

-4-

payment on their claim. Under the terms of the parties' contract, Britt Paulk was barred from investigating, defending, or denying any claim against North American. Britt Paulk was also contractually required to "give [North American] prompt written notice of any claim, demand, action, suit, or proceeding raised, brought, threatened, made, or commenced."

Prior to trial, North American moved to exclude testimony of Britt Paulk's expert Diane L. Luther, who would have testified that North American mishandled the McDonalds' claim by deviating from accepted insurance industry standards of care. Granting the motion to exclude, the district court reasoned that Luther's opinion would not be helpful because the jury was perfectly capable of deciding the case without her testimony. On the same day, the district court granted Britt Paulk's motion to exclude testimony by North American's expert, Michael Atkinson, for similar reasons.

During the presentation of North American's case, Jerry McDonald testified that he paid his premiums to Argenia and therefore understood Argenia to be his insurance company. Alexander, Argenia's representative, testified that he notified Britt Paulk that the McDonalds continued to seek payment. For his part, Barham, Britt Paulk's manager for the poultry property program, testified that he did not recall receiving any such notice. Notably, Barham did not notify North American about the ongoing discussions or the McDonalds' expressed desire for payment.

After North American concluded its case, Britt Paulk moved for judgment as a matter of law, which the district court took under advisement. Following testimony from Britt Paulk's sole witness, the case proceeded to closing arguments. During its rebuttal argument, counsel for North American argued that Britt Paulk and Argenia had failed to produce certain phone records from the months after North American was notified that the McDonalds did not seek payment on their claim. North American's counsel told the jury, "[T]his case could have been so much simpler if [Britt Paulk or Argenia] would have stepped up and showed you that phone record." He reiterated that Britt Paulk and Argenia "should have felt compelled to bring [the jury] their own client's [phone] records," calling them "the one [thing] they didn't want to show you." Britt Paulk moved for a mistrial. This was denied on the basis stated by the district court that Britt Paulk had not been prejudiced.

After being instructed against awarding duplicative recoveries,[3] the jury, by special interrogatories, found that Britt Paulk breached its contract with North American, directly causing North American to settle with the McDonalds, and

_____

[3] Specifically, the jury was instructed:

You must not award damages more than once for the same injury. For example, if plaintiff prevails on two claims and establishes a dollar amount for its injuries, you must not award it any additional damages on each claim. The plaintiff is only entitled to be made whole once, and may not recover more than it has lost.

awarded $500,000 on that claim. On the negligence claim, the jury awarded $250,000 in damages. It found Britt Paulk and Argenia each responsible for 40% of North American's negligence damages. North American was itself 20% responsible. The jury further found Britt Paulk liable to North American for contractual indemnification in the amount of $250,000.

Judgment was entered in favor of North American on the negligence claim and the breach of contract claim, including awarding attorneys' fees. Without making factual findings regarding duplicative recovery or providing any explanation, however, the court entered judgment in favor of Britt Paulk and against North American on the contractual indemnification claim.

North American moved for reconsideration, arguing that the jury awards were not duplicative. While North American's motion was pending, Britt Paulk moved for a new trial and renewed its earlier motion for judgment as a matter of law. Britt Paulk also moved the court to reconsider its judgment in favor of North American on both negligence and breach of contract, contending that these awards amounted to double recovery and that North American was not entitled to attorneys' fees. The district court denied all motions, leaving intact the previously-entered judgment and award of an undetermined amount of attorneys' fees. North American and Britt Paulk both appeal.

**II**

We first consider Britt Paulk's contention that the district court should have granted its motion for judgment as a matter of law. We review denial of a motion for judgment as a matter of law de novo, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to North American, the non-movant. Keylon v. City of Albuquerque, 535 F.3d 1210, 1214-15 (10th Cir. 2008). "Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d 1063, 1081 (10th Cir. 2008) (quotation omitted). Britt Paulk contests only whether there was evidence that it caused North American to have to settle the McDonalds' bad faith claim.

North American contends that three acts or omissions by Britt Paulk caused settlement of the bad faith claim: (1) Britt Paulk allowed the creation of a coverage opinion regarding the McDonald's property, (2) it allowed that opinion to be communicated to the McDonalds, and (3) it failed to notify North American of the McDonalds' continued efforts to make a claim. Barham, Britt Paulk's representative, testified that he told Argenia that he did not think the loss from blasting would be covered under the North American insurance policy and that he thought the coverage opinion would be relayed to Jerry McDonald. For his part, McDonald testified that Alexander informed him that the damage resulting from

-8-

blasting was likely not covered.  McDonald testified further that he understood the opinion communicated by Argenia (generated by Britt Paulk) to be authoritative because Argenia was the company to whom he sent his payments.  Moreover, ample evidence was presented that Britt Paulk did not notify North American of the McDonalds' continued efforts to make a claim.

Britt Paulk responds that it was required only to notify North American of "new" claims, and because it was unaware that North American had closed its file in February 2004, Britt Paulk assumed the claim was still pending.  We are told, therefore, that failure to provide notice did not breach a duty Britt Paulk owed to North American.[4]  We disagree.  The terms of Britt Paulk's agreement with North American provide that Britt Paulk must "give [North American] prompt written notice of <u>any</u> claim, demand, action, suit, or proceeding raised, brought, threatened, made, or commenced against [North American]."  (Emphasis added).  Based on that language, Britt Paulk was required to notify North American of <u>any</u> demand made by the McDonalds, not just "new" ones.  North American presented a bounty of evidence to support the jury's finding Britt Paulk's acts and omissions caused North American to settle the McDonalds' lawsuit.

---

[4] Notwithstanding the label attached by Britt Paulk in its briefing, this argument does not focus on whether Britt Paulk's omission <u>caused</u> North American's damage.

**III**

Britt Paulk also contends that the district court erred by excluding Luther's expert testimony. We review a district court's decision to exclude expert testimony for abuse of discretion. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999); Dodge v. Cotter Corp., 328 F.3d 1212, 1223 (10th Cir. 2003). "[W]e will not disturb the district court's ruling unless it is arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Dodge, 328 F.3d at 1223 (quotation omitted).

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), establishes a two-part test for admission of expert testimony under Federal Rule of Evidence 702. First, evidence must be reliable, and second, it must be helpful to the jury. Daubert, 509 U.S. at 590-91; see also Fed. R. Evid. 702. Relying on what we have called "the touchstone of admissibility" under Daubert, Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994) (quotation omitted), the district court invoked the second prong of this test to exclude Luther, concluding that the jury was perfectly capable of resolving the issues in this case without expert testimony. Notably, it also applied this conclusion evenhandedly to North American's proposed expert witness, Atkinson.

Britt Paulk contends that the jury should have been permitted to hear testimony regarding standard insurance industry practice. Such evidence, it

-10-

claims, would help Britt Paulk establish that North American mishandled the McDonalds' claim, causing it to settle the bad faith lawsuit. Britt Paulk relies on Ford v. Allied Mutual Insurance Co., 72 F.3d 836 (10th Cir. 1996), for the proposition that insurance experts may testify regarding industry standards. In Ford, the district court permitted expert testimony on the issue of bad faith, overruling an objection that the expert's testimony was either legally or factually erroneous. Id. at 841. Britt Paulk's reliance is misplaced. First, the issue in Ford is not analogous to the present case. Second, that the district court in Ford did not abuse its discretion by allowing expert testimony by an insurance industry expert does not lend measurable support to the contrary position that the district court in this case abused its discretion by refusing to permit similar testimony. See Shook v. Bd. of County Comm'rs of County of El Paso, 543 F.3d 597, 603 (10th Cir. 2008).

Thompson is closer to our present case. In Thompson, we affirmed a district court ruling excluding testimony of an insurance industry expert in a case alleging bad faith denial and investigation of insurance claims because the "expert testimony [wa]s offered on an issue that a jury is capable of assessing for itself." 34 F.3d at 941. As here, the excluded expert would have compared the insurance company's actions to the industry standard. Id. For the same reasons, we conclude that the district court did not abuse its discretion by excluding Luther's testimony because it would not assist the trier of fact. As the district court

-11-

recognized, the jury was fully capable of deciding this case without expert testimony from either party.

## IV

Britt Paulk asserts that the district court erred in refusing to grant a mistrial based on statements North American's counsel made during the rebuttal portion of closing argument. Counsel for North American argued that Argenia's phone records would have been useful to the issues at trial and that neither Britt Paulk nor Argenia produced them, thereby intimating that Britt Paulk and Argenia had something to hide.[5] It is suggested that a mistrial was required both because the statements were made during rebuttal, thereby depriving Britt Paulk of an opportunity to respond, and because they referenced evidence not before the jury. We review denial of a mistrial for abuse of discretion. Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 769 (10th Cir. 1997). We conclude that the district court did not abuse its discretion in refusing to grant a mistrial because it does not "clearly appear[] that the challenged remarks influenced the verdict." See Lambert v. Midwest City Mem'l Hosp. Auth., 671 F.2d 372, 375 (10th Cir. 1982).

As the district court explained, a great deal of testimony described phone calls between Argenia and Britt Paulk. It was uncontroverted that Britt Paulk did

---

[5] Britt Paulk also contends that the rebuttal argument contained improper attacks on the credibility or ethics of its lawyers. We decline to address this argument as it was not raised below. See Sewell v. Great N. Ins. Co., 535 F.3d 1166, 1170 n.2 (10th Cir. 2008).

-12-

not notify North American of developments regarding the McDonalds' desire for payment. Moreover, absence of phone records does not bear on whether Britt Paulk rendered a coverage opinion regarding the McDonalds property, whether that opinion was relayed to the McDonalds, and whether the McDonalds relied on it. We have already concluded that sufficient evidence supported the jury's liability findings. See Part II, supra. It may well have been improper to imply that Britt Paulk was hiding evidence, but on this record it does not "clearly appear" that Britt Paulk was prejudiced. See Lambert, 671 F.2d at 375; cf. Whittenburg v. Werner Enters. Inc., 561 F.3d 1122, 1131-33 (10th Cir. 2009) (ordering new trial when counsel made repeated improper remarks during closing argument, the district court took insufficient curative action, and the size of the damage award indicated prejudice).

## V

Lastly, we consider North American's contention that the district court erred in entering judgment for Britt Paulk on the contractual indemnification claim and Britt Paulk's related contention that the district court erred in entering judgment for North American on the negligence claim. "Whether an award is duplicative is a question of fact, which we review for clear error." Morrison Knudsen Corp., 532 F.3d at 1077. An error is clear "only if the court's finding is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." Aquila,

Inc. v. C.W. Mining, 545 F.3d 1258, 1263 (10th Cir. 2008) (quotation omitted).

When a jury is instructed not to award duplicative damages and it returns a total damage figure within the range of evidence, we are generally unwilling to disturb or second guess the jury's verdict. Questar Pipeline Co. v. Grynberg, 201 F.3d 1277, 1287 (10th Cir. 2000); see also Youren v. Tintic Sch. Dist., 343 F.3d 1296, 1306 (10th Cir. 2003) (reiterating the standard presumption that juries follow their instructions). In the present case, the jury was instructed not to "award damages more than once for the same injury." Moreover, the total amount of damages the jury awarded to North American ($950,000, including the damage award against Argenia) was lower than the $1.2 million North American paid the McDonalds. Without making any factual findings to support its conclusion, the district court determined that the contractual indemnification claim was duplicative of the breach of contract claim. But this conclusion is belied by the district court's own words. In denying a motion for reconsideration, the district court stated, "The contractual indemnification claim, aside from the 'cost of defense' provision, is duplicative of the breach of contract claim." (Emphasis added). Because the jury was instructed to avoid double recovery and the total damage award was within the range of evidence, the jury's verdict should not be upset based on speculation. See Midwest Underground Storage, Inc. v. Porter, 717 F.2d 493, 501 (10th Cir. 1983). In the absence of a factual finding, the decision that the contractual indemnification claim was duplicative was clearly

-14-

erroneous.[6]

Regarding Britt Paulk's contention that the breach of contract award is duplicative of the negligence award, our review is again for clear error. See Morrison Knudsen Corp., 532 F.3d at 1077. On this issue, however, the district court did not set aside the jury's verdict. Thus, the district court's conclusion that the negligence and breach of contract recoveries were not duplicative squares with Questar Pipeline Co. and our presumption that juries follow their instructions. Accordingly, that conclusion was not clearly erroneous.

**VI**

For the foregoing reasons, the judgment of the district court is **AFFIRMED** in all respects save its entry of judgment in favor of Britt Paulk on the contractual indemnification claim. As to that claim, the judgment of the district court is **REVERSED**, and the case is **REMANDED** with directions to enter judgment in favor of North American and reinstate the jury's award.

---

[6] Even had the district court's conclusion not been clearly erroneous, it would have been error nonetheless to enter judgment in favor of Britt Paulk to prevent a double recovery by North American. Rather, in a case of double recovery, a district court "should reduce the judgment by the amount of the duplication" but not enter judgment in favor of the plaintiff. Morrison Knudsen Corp., 532 F.3d at 1079.