FILED
United States Court of Appeals
Tenth Circuit

March 20, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

TIMOTHY BEENE,

        Plaintiff-Appellee,

v.

FORD MOTOR COMPANY,

        Defendant-Appellant.

No. 12-1047
(D.C. No. 1:08-CV-01086-MSK-BNB)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before **LUCERO, HOLLOWAY** and **HARTZ**, Circuit Judges.

      This appeal comes from the district court's final judgment, entered after a jury trial, in a civil action. The district court's jurisdiction was based on diversity of citizenship. Appellate jurisdiction is granted to this court by 28 U.S.C. § 1291.

**I**

      Plaintiff-Appellee Timothy Beene (Plaintiff) was injured when a parked Ford Expedition rolled down an incline and struck him. Mr. Beene sued Defendant-Appellant Ford Motor Company, alleging that the Expedition was unreasonably

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

dangerous and invoking the theory of manufacturer's strict liability for a defective product. Mr. Beene also alleged breach of a duty to warn consumers about a known product defect.

Plaintiff was a volunteer firefighter in Ridgway, Colorado. On June 7, 2006, he responded to a reported fire near the town's new high school. Ridgway Town Marshal David Scott also responded. Scott parked his 1997 Ford Expedition on a downward slope and left it with the engine running and without setting the parking brake. Plaintiff's pickup was 86 feet from Scott's Ford. Thirty minutes later, the small fire had been extinguished, and Plaintiff was sitting on the tailgate of his pickup to take off his firefighter's gear. Scott's vehicle started rolling down the slope and struck Plaintiff, causing serious injuries to both of Plaintiff's legs. Plaintiff's left ankle was crushed and his right leg broken in three places.

What caused the Marshal's vehicle to begin rolling down the gentle slope where he had left it after having remained there for about thirty minutes? That was the most contested issue at trial. Witnesses for both parties seemed to agree, however, that it was not surprising that a vehicle with an automatic transmission could remain stationary for some time and then begin to roll when that vehicle's transmission had been left in the neutral gear. The focus of the dispute at trial was whether Marshal Scott had moved the gear shift lever to the neutral position or, as Plaintiff contended, something rather different had happened.

-2-

Plaintiff's theory, which the verdict shows the jury accepted, was that Marshal Scott had tried – but inadvertently had failed – to move the gear shift lever all the way to the park position. According to evidence submitted by Plaintiff, years of use had created a condition in which it was possible for the gear shift lever to stop in a position between reverse and park, and in that position the vehicle was effectively in neutral. Plaintiff's witnesses referred to this as "hydraulic neutral." This was the basis for Plaintiff's product-liability claim.

Ford, however, had become aware of the problem as early as 1997. Apparently the problem was detected because of a relatively trivial issue reported by some users: the driver would turn off the engine but not be able to remove the key. Investigation of that problem led to the conclusion that the gear shift lever on those vehicles had not been put all the way into park, which led to discovery that more serious problems could result. Ford designed a "fix" in 2000, and notified dealers about it but did not notify owners directly. This was the gist of Plaintiff's failure-to-warn claim.

Ford's primary contention at trial was that the accident had a different cause. Ford argued that it was more likely that Marshal Scott, rather than having attempted to shift into park, had absent-mindedly shifted into the regular neutral position – not the "hydraulic neutral" that was possible due to the condition of the vehicle, but the neutral position between reverse and drive. Marshal Scott testified that he had never before accidentally left the transmission in the hydraulic neutral position. Moreover,

Ford presented evidence tending to show that it might be difficult for a driver to accidentally land in the hydraulic neutral position. And Scott admitted that he had not set the parking brake on his vehicle. Accordingly, Ford argued that the vehicle was not defective and that Scott's negligence had been the cause of the accident.

Because the federal district court's jurisdiction in this case was based on diversity of citizenship, state law governs the substantive issues. *See, e.g.*, *Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735, 737 n.4 (10th Cir. 2009) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 77-78 (1938)). The parties in the instant case apparently agreed that Colorado law should be applied. (At least, if there was any dispute about the point, we did not detect it in our review of the appendix submitted by the parties.) Colorado is a "comparative fault" state. Accordingly, Ford was able to present the jury with an alternative to finding that Scott's negligence had been the sole cause of the accident: The jurors were instructed that if they found that vehicle was defective and that the defect was a cause of the accident, they should determine whether Scott's negligence was also a cause of the accident; and if they found that both Ford and Scott had caused the accident, then they should apportion fault between the two. V Jnt. Appx. 1040-41.

After Plaintiff had presented his evidence, the district judge decided to dismiss the failure-to-warn claim. The judge reasoned that the failure-to-warn claim was fully "subsumed" by the products liability claim and that submitting both to the jury would be confusing and could lead to a double recovery. Neither side asserts error

in this ruling. But the judge also said that in closing arguments counsel for Plaintiff could discuss the evidence that the jury had heard about the failure to warn, and this is Ford's first issue on appeal.

As for the Plaintiff's damages, it is not disputed that his injuries were very serious and will permanently limit his mobility, as well as cause ongoing pain, which may get worse as arthritis affects the injured areas. There was also undisputed evidence that, after having endured seven surgeries, Plaintiff would almost certainly require more. Indeed, in closing argument counsel for Ford told the jury that Ford had "only a slight dispute" about the damages requested. Ford argued that Plaintiff's suggested figure for lost future earnings was inflated, but Ford did not contest that Plaintiff's future earning potential had been diminished by the injuries.

The jury found that the vehicle was defective and that the defect was 85% of the cause for the accident, with Scott's negligence supplying the remaining 15%. The jury found that Mr. Beene's damages were $3,565,000. That amount was reduced by fifteen percent to account for the degree to which the jury had found that Marshal Scott's negligence had been a contributing cause of the accident.

## II

Ford raises two issues on appeal, and both are based on the closing argument by counsel for Mr. Beene. More specifically, both are based on the district court's denial of Ford's motion for new trial, which was based on Plaintiff's closing argument. A contention that improper argument or other trial misconduct was so

serious that a new trial should have been granted is "largely left to the discretion of the trial court, and we reverse only if the district court clearly abused its discretion. Furthermore, a new trial may be required only if the moving party shows that it was prejudiced by the attorney misconduct." *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1456 (10th Cir. 1997) (internal citations omitted), *overruled on other grounds*, *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011). That standard, however, applies only if the issue was properly preserved in the trial court. As we will discuss, some of the remarks that Ford now contends were improper were not objected to at trial, and we will not reverse the trial court's denial of the motion for new trial unless plain error is shown.

## A

Ford maintains that it was unfairly prejudiced by the trial judge's ruling which allowed counsel for Mr. Beene to comment on the evidence that had been presented regarding Beene's failure-to-warn claim. Plaintiff contends that this issue should be reviewed only for plain error because Ford did not object at trial when the judge first ruled that counsel for Plaintiff could refer to the evidence of failure to warn in closing arguments; instead, no objection was made until Plaintiff's counsel made references to the evidence in closing.

As previously noted, at the close of the evidence the trial judge had granted Ford's motion for judgment as a matter of law on the failure-to-warn claim. Significantly, however, the judge did *not* rule that Plaintiff's evidence had been

insufficient to support the stricken claim, the sole basis on which Fed. R. Civ. P. 50(a)(1) authorizes trial judges to grant such motions.[1] The judge said that she interpreted the rule "to include dismissal of a claim where it cannot be brought under the law." As to the Plaintiff's failure-to-warn claim in this case, the judge said that the claim "is subsumed in all material respects in the plaintiff's first claim, which is a strict liability claim based on a design defect." The judge explained that the failure-to-warn claim could not succeed unless the jury made a finding that the vehicle was defective when sold, the same finding that would have to be made to sustain the strict liability claim. In her oral ruling from the bench, the judge cited and briefly discussed two cases from this court, *Romero v. International Harvester Co.*, 979 F.2d 1444 (10th Cir. 1992), and *Oja v. Howmedica, Inc.*, 111 F.3d 782 (10th Cir. 1997). In *Oja*, the judge noted, this court had reversed a judgment on the

---

[1]Rule 50(a)(1) provides:

(a) Judgment as a Matter of Law.

(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

ground that the jury had rendered an irreconcilably inconsistent verdict in finding for the defendant on a failure-to-warn claim under a strict liability theory but in favor of the plaintiff on a negligent-failure-to-warn claim.

The judge went on to explain that she found an implicit "suggestion" in *Oja* that where the only contested elements on two claims are identical to each other, "the Court should avoid the temptation to give the jury two effectively identical claims running the risk of the jury returning an inconsistent verdict."[2] We are unaware of any other court which has found such a suggestion in *Oja*. Nor are we aware of any decision endorsing the path chosen by the district court here. But Plaintiff has not alleged any error in this ruling, so we need not and do not decide whether this decision was in error.

After having decided to grant Ford's motion, the trial judge said that she would still permit counsel for Plaintiff to argue

> that Ford bears X percent of the responsibility for the accident because of its defectively designed product and an additional Y percent of the responsibility for the accident because it failed to give additional warnings of that defect to owners as to the nature and magnitude of the defect as it became clearer to Ford.

V Jnt. Appx. at 1025.

After concluding her explanation for her ruling, the trial judge asked the parties if there was any need for clarification or further explanation of her ruling.

[2] In this case, the contested element under both claims was whether the vehicle was defective at the time of manufacture.

Both parties answered that there was no such need. Significantly, counsel for Ford made no objection to the ruling that counsel for Plaintiff would be allowed to refer to the failure-to-warn evidence in closing argument and to use the failure as a basis for exhorting the jury to find Ford responsible for Plaintiff's injuries.

Ford now contends that it properly preserved the issue because it had previously made its position clear to the trial judge.[3] In support of this contention, Ford cites arguments made to the court during trial on whether certain exhibits offered by Plaintiff should be excluded under Fed. R. Evid. 403, and arguments it made after the close of the evidence in support of its motion for judgment as a matter of law on the failure-to-warn claim. This is simply insufficient as an objection to the court's *later* ruling that Plaintiff would be able to discuss the failure-to-warn evidence in closing argument. No doubt Ford's counsel failed to anticipate the split-the-baby approach chosen by the trial judge, granting Ford's motion for judgment as a matter of law on the failure-to-warn claim but allowing Plaintiff's counsel in closing to comment on the evidence that had been offered in support of that claim. But it is precisely because the ruling did not grant Ford all that it wanted that a contemporaneous objection should have been made.[4]

---

[3]Ford's record cites are only in its reply brief, to counter Plaintiff's argument that the issue was not properly preserved. Ford's opening brief failed to follow 10th Cir. R. 28.2(C)(2) & (3), which require the litigant to cite where in the record we can find that the issue was raised and ruled upon.

[4]Fed. R. Civ. P. 46 provides:

(continued...)

Our conclusion is buttressed by our consideration of the context in which this issue arose. The judge's ruling now alleged to have been in error was made in a bench conference, *i.e.*, at a time when the trial judge could have heard Ford's objection without further interruption of the proceedings, since the judge was already hearing the attorneys on points of law. In contrast, by waiting to object until Plaintiff's counsel exercised the right given by the judge to discuss the evidence in closing, Ford's counsel interrupted the argument to make an objection that could have – and should have – been made before. Not only was this disadvantageous for Plaintiff's counsel, but it needlessly put the trial judge in a dilemma: She could either rule immediately, so as to minimize the disruption of the proceeding, or hold a bench conference to permit thorough airing of the parties' positions on the objection; she could not do both.

Ford's contention that it preserved this issue is further undermined by its own argument in support of its motion for judgment as a matter of law, in which counsel for Ford told the trial court that, in support of his strict-liability claim, Plaintiff could argue "what did [Ford] include in its warnings vs. what they're going to argue they

[4](...continued)
Rule 46. Objecting to a Ruling or Order

A formal exception to a ruling or order is unnecessary. When the ruling or order is requested or made, a party need only state the action that it wants the court to take or objects to, along with the grounds for the request or objection. Failing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made.

should have included . . . all under the strict liability claim."  V Jnt. Appx. 933-34.

Indeed, this statement seems very close to an intentional waiver of the issue.

Moreover, when Ford did raise the issue by objecting during the closing argument by counsel for Mr. Beene, its objection fell short.  Ford's attorney argued:

> This is improper and prejudicial, your Honor, in that he is trying to inject duty to warn on a claim that's not in the case and to say that he personally would do that.  He's attempting to hold Ford liable under a post-sale failure to warn, which this court has stricken . . . .

VI Appx. 1069.  Plaintiff's counsel responded by noting that while the court had stricken the claim, it had specifically authorized him to comment on the evidence that had been introduced to support the claim.  Ford's attorney said nothing further.

Significantly, even in stating this objection, Ford's counsel never said that it disagreed with the trial judge's ruling permitting Plaintiff to make this argument.

We therefore conclude that our standard of review on this issue is plain error, assuming that it is reviewable at all.  Even if we were to review under the normal abuse of discretion standard, however, we would find that any error was harmless. The jury had heard – without objection – Plaintiff's evidence in support of its failure to warn claim.  Ford did not ask that the jurors be instructed to ignore that evidence. Ford objected when Plaintiff's counsel said that he would have sent a letter to all Ford owners if it had been up to him, and the judge sustained Ford's objection to that line of argument.  Considering the references to the failure-to-warn claim in the full

-11-

context of the trial, we conclude that the jurors were very unlikely to ignore the instructions and decide the case on those few comments.

**B**

Ford asserts that in addition to the failure-to-warn references in the closing arguments of Plaintiff, counsel made other improper remarks in closing which were sufficiently prejudicial that a new trial should be ordered. Ford addresses these remarks in two groups: remarks that referred to matters not in evidence, and remarks that invited the jurors to put themselves in the place of Plaintiff.

Plaintiff first referred to matters not in evidence when he told the jurors that the Town of Ridgway (which apparently had indemnified Marshal Scott in this matter) had settled with Plaintiff for two per cent of his claimed damages and that Plaintiff had accepted that amount "after going out there and seeing what happened." Ford objected and asked for a curative measure – that the court forbid Plaintiff's counsel from disclosing the dollar amount sought to prevent the jury from using the two per cent information. The trial judge sustained the objection but denied the requested curative measure.

Ford also contends that it was improper when, in explaining the sum sought for lost wages, Plaintiff's counsel referred to minimum wage. There was no evidence about the minimum wage or the calculation, so this remark went outside the evidence. Again, the court sustained Ford's objection, at a bench conference held immediately after the objection had been made. The judge then asked Ford's counsel

what remedy was sought. Ford requested that Plaintiff's counsel be precluded from "suggesting a sum certain for future economic losses . . . ." Counsel for Plaintiff said that he did not object to that request. But the trial judge might have misunderstood what was being asked of her, because after Plaintiff had signaled his acceptance of the curative measure sought by Ford, the judge instead ruled that Plaintiff's counsel could ask for a specific dollar amount for future economic losses but could not offer "analysis as to how you come to the number you request." Ford did not object to that curative measure.[5]

Ford argues that the repeated introduction of extraneous matters in closing requires a new trial. Reversible error results when "extraneous matter which has a reasonable probability of influencing the jury" is put before the jury. *Lambert v. Midwest City Mem. Hosp. Auth.*, 671 F.2d 372, 375 (10th Cir. 1982). In *Lambert*, as in this case, counsel improperly discussed settlement with another party, but in that case it was the defendant's counsel who told the jury that as a result of a settlement with a doctor, "I think you can assume the [plaintiff] will have no problems." This court held that this remark was so prejudicial that a new trial was required, but did so only after noting that the trial judge's attempt to mitigate the effect of the improper comment with a curative instruction had actually compounded the problem. *Id.* at 376.

---

[5]*See* VI Aplt. Appx. 1087-88.

In this case, Ford argues, counsel's remarks caused the jury to decide the case out of sympathy. This is shown, Ford says, from the fact that the jury awarded Plaintiff almost the entire sum requested and assigned only a small percentage of causation to the negligence of Marshal Scott.

Ford refers to the second category of allegedly improper remarks as "golden rule" remarks. Ford contends that Plaintiff's counsel improperly and repeatedly asked the jurors to put themselves in Plaintiff's position. For example, Plaintiff counsel said, "If you leave your vehicle thinking it's in park and its not . . . it can hit anything. It can hit your child." Counsel also said that the defect in Scott's vehicle could result in "causing potentially huge harm to each one of us." Further, Plaintiff's counsel said that his client "was in the protection business. He was willing to go into your house and rescue your child in a fire . . . . He was willing to risk his life for us."

Ford asserts that references like these were made throughout closing argument, to the point that defense counsel quit objecting after three times. Courts have often condemned these "golden rule" arguments, Ford contends.

In response to these arguments, Plaintiff first stresses the deference due in appellate review of this issue. Because the appellate court is limited to reviewing the written record, we should and do give great deference to the trial judge who observed the trial and who found that any misconduct was not so egregious as to require a new trial. *See Polson v. Davis*, 895 F.2d 705, 711 (10th Cir. 1990).

Addressing Ford's specific points, Plaintiff asserts that it was Ford's counsel that introduced in evidence the fact of the previous settlement with the Town of Ridgway. The trial court sustained Ford's objection to the remark about the settlement having been 2% of the claimed damages and instructed the jury to disregard all statements by Plaintiff's counsel about settlement. In denying Ford's motion for new trial, the trial judge noted that the jury had apparently *not* been influenced by the settlement remark, because they affixed Scott's liability at 15%, not 2%. And the jury's decision made sense, Plaintiff contends. Ford put the blame on Scott for not setting his parking brake, but Ford's own witness admitted that 80% of drivers do not use their parking brake after putting their vehicles in Park.

Plaintiff denies that any "golden rule" remarks were made. The jury was instructed that, to prove liability, Plaintiff had to prove that the design defect "was unreasonably dangerous to persons who might use" the defective vehicles. In this case, of course, Plaintiff Beene was a bystander, not the owner or operator of the defective vehicle. Therefore, Plaintiff contends, the statements that the defect can cause a car to roll away so that "it can hit anything" and the like were not golden rule comments but a reference to who could be affected or injured by the defect, which went to the issue of liability. The trial judge did not rule on the "golden rule" argument because no objections were made at trial, Plaintiff says. Ford did not even raise this issue in its post-trial motion.

We find no abuse of discretion in the district judge's conclusion that the jury was not unduly influenced by the allegedly improper remarks. The remarks complained of were few and isolated, and Ford's three objections were sustained. Although the evidence of defect was vigorously disputed, there is nothing to suggest that the jury was influenced by improper evocation of emotional factors. And as to damages, in its closing argument Ford said that it had only a "slight" dispute as to the amount of damages claimed. Objections, when made, were sustained. The trial judge concluded that those remarks which were improper were not so inflammatory as to have affected the fairness of the trial, and we can see no abuse of discretion in that ruling.

**Conclusion**

The judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


William J. Holloway, Jr.
Circuit Judge